Judith A. Shive, Appellant, *v.* Bellefonte Area Board of School Directors, Appellee.

Argued February 5, 1974, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*William A. Hebe,* with him *Spencer & Gleason,* for appellant.

*John R. Miller,* with him *Miller, Kistler, Campbell & Mitinger,* for appellee.

Opinion by Judge Mencer, March 27, 1974:

The facts leading to this appeal are not in dispute. On August 11, 1972, Dr. Mauger, Superintendent of the Bellefonte Area School District, received the resignation of a mathematics teacher. The next term of school was scheduled to commence on September 5, 1972. Faced with this faculty vacancy, Dr. Mauger, on August 14, 1972, mailed letters to four possible candidates for the open position.

One of the four persons contacted was Judith A. Shive, the appellant here. She was interviewed by Dr. Mauger on August 21, 1972, but her credentials and recommendations did not come into Dr. Mauger's possession until August 28, 1972. At the regular school

board meeting held on August 22, 1972, Dr. Mauger explained to the school board that he had interviewed only one candidate and that a second candidate would be interviewed the following morning.

The confidential file of Miss Shive contained six reports of credentials, of which three pertained to teaching and three related to other areas. One of the three reports related to teaching was unfavorable. However, despite the unfavorable report, Dr. Mauger informed Miss Shive by letter dated August 29, 1972 that he was recommending her to the Bellefonte Area Board of Education for a secondary mathematics teaching position for the 1972-73 school year. The letter also stated that it was to be her authority to report for work on the first day of school.

What happened thereafter relative to Miss Shive and her relationship with the Bellefonte Area Board of School Directors (School Board) is well explained in the lower court's opinion:

"Miss Shive reported for work on September 5 and continued to work until September 11 when the teachers went out on strike.

"On September 10 Dr. Mauger met with a committee from the School Board which reviewed recommendations. At that time the area of credentials was explained but no action was taken.

"On September 11, 1972, a teachers' strike against the school began. The following day the local newspaper carried a photograph of Miss Shive and another teacher on picket duty; Miss Shive carried a sign which read 'No contract—No work.'

"The committee of the School Board next met on September 13 and requested that Dr. Mauger contact the person who had made the unfavorable recommendation. Subsequently, on September 17, Dr. Mauger reported to the committee that the recommendation had been confirmed.

"At the next regular meeting of the School Board on September 19, 1972, Dr. Mauger made a recommendation of Miss Shive for the position; however, the Board took no action and, hence, Miss Shive was not employed.

"On September 20, Dr. Mauger notified Miss Shive of the School Board's action and informed her that her services were being terminated.

"On September 25, Dr. Mauger met with Miss Shive and explained that her termination was due to her poor credential rating. Dr. Mauger refused to release the credentials because of their confidential nature, but suggested that Miss Shive contact her college or secure a letter authorizing him to release the information.

"The School Board again reviewed Miss Shive's application along with those of two other candidates at their October 19 meeting, but chose not to offer her the position. Although the content of the recommendation had been revealed at its earlier September 13 committee meeting, this was the first time the Board saw the actual written recommendations."

A charge of unfair labor practices was filed on Miss Shive's behalf with the Pennsylvania Labor Relations Board (Labor Board), alleging that the School Board had violated Section 1201(a)(1) and (3) of the Act of July 23, 1970, P. L. 563 (Act), 43 P.S. §1101.1201 (a)(1), (3).[1] Following two hearings, the Labor Board issued a nisi order, on January 29, 1973, holding

---

[1] Section 1201(a) provides that "[p]ublic employers, their agents or representatives are prohibited from:

"(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act [43 P.S. §1101.401].

. . . .

"(3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization."

that the School Board did violate Section 1201(a)(1) and (3) of the Act by the "termination of the services of employe, Judith A. Shive."

Timely exceptions to the Labor Board's nisi order were filed by the School Board. On May 10, 1973, a final order was issued by the Labor Board dismissing the exceptions and making final the nisi order of January 29, 1973. The School Board filed an appeal from the final order to the Court of Common Pleas of Centre County which overruled the order of the Labor Board. Miss Shive then filed this appeal and we affirm.

We consider here the questions of whether or not the finding of the Labor Board that the School Board unlawfully discriminated against Judith A. Shive was supported by substantial and legally credible evidence and whether the conclusions deduced therefrom were reasonable and not capricious.

Section 1502 of the Act, 43 P.S. §1101-1502, provides, in pertinent part, that "findings of the Board as to the facts, if supported by substantial and legally credible evidence, shall in like manner be conclusive."

Substantial evidence is more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established. *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.*, 345 Pa. 398, 29 A. 2d 90 (1942). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ronnie's Bar, Inc. v. Pennsylvania Labor Relations Board*, 411 Pa. 459, 192 A. 2d 664 (1963). However, if a reasonable man could not have reached the decision from the evidence and its inferences, then the decision is not supported by substantial evidence and it should be set aside. *A. P. Weaver and Sons v. Sanitary Water Board*, 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971).

Keeping in mind these principles of review, we have carefully read and reread the record and can only reach the conclusion that the evidence here was substantially insufficient either to prove that the School Board knew of Miss Shive's union activities or to prove that the School Board did not employ her because of her union involvement. We conclude, as did the lower court, that the Labor Board's order was based on suspicion and conjecture rather than substantive proof.

We cannot accept the Labor Board's premise that a photograph appearing in a local newspaper, showing Miss Shive on picket duty carrying a sign reading "no contract—no work," was the sole motivation for the School Board's examination of the unfavorable report of credentials in the area of teaching given by a representative of the teachers' college where she had been trained or that it accounted for the School Board's unwillingness to hire Miss Shive. We could hardly agree with such a position without any testimony indicating knowledge of the photograph in question by the School Board or the members of its employment committee or that they knew or recognized that Miss Shive was the person shown in the photograph as the sign carrier. The record is totally silent as to whether any member of the School Board was personally acquainted with Miss Shive or was aware of her participation on the picket line.

Further, the record discloses that the School Board had, on at least two previous occasions, declined to hire employes recommended by the Superintendent, Dr. Mauger, and that the School Board had never before employed a professional employe who had an unfavorable report relating to the teaching aspect of the teacher's credentials.

It is also of significance that one filing an unfair labor practice charge has the burden of proof. On the

record before us the appellant has not carried that burden.

The only legally credible evidence in the record relative to the School Board's decision not to employ Miss Shive is the unfavorable report pertaining to her teaching credentials and the School Board's desire and policy to employ quality personnel.

The Labor Board concluded that, in addition to the evidence, "the timing of the termination, the failure of the School to testify as to the nature and seriousness of the bad recommendation, or submit a copy of this into evidence," combined to result in a violation of Section 1201(a)(1) and (3) of the Act. We fail to understand the importance of the "timing of the termination" when it is not disputed that the School Board's regular meetings were on September 19, 1972 and October 19, 1972. Also, we are in accord with the lower court's observation that "the Labor Board further utilizes an unwarranted inference against the defendant School Board because of a failure to place in the evidence a copy of the bad recommendation. The testimony indicates that the same was confidential and could only be released with Miss Shive's permission and therefore the absence of the content of the unfavorable recommendation could under no circumstances be used as an inference against the defendant School Board."

Having satisfied ourselves that the record before us does not support, by substantial and legally credible evidence, the Labor Board's finding that the School Board unlawfully discriminated against Judith A. Shive in regard to the hiring of her services, we need not consider here what status, if any, Miss Shive had during the first four days of the 1972-73 school year and whether the Labor Board had the power to order the School Board to "restore" her to a professional teacher's status.

Order affirmed.