Jerry Lee Norwood, Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania Horse Racing Commission, Appellee.

220

Argued September 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Edward S. Finkelstein,* for appellant.

*James F. Cendoma,* for appellee.

OPINION BY JUDGE KRAMER, November 18, 1974:
This is an appeal filed by Jerry Lee Norwood (Norwood) from an order of the Pennsylvania State Horse

Racing Commission (Commission) dated December 14, 1973, revoking Norwood's owner's and trainer's license and fining him in the sum of $5,000.

On May 31, 1973, the Commission issued a preliminary order suspending Norwood's license. This order contained allegations that Norwood had (1) participated in or had knowledge of (a) the administering of prohibited stimulants to horses at the Penn National Race Track and (b) the switching of urine samples so as to conceal the use of these stimulants; and (2) personal possession of hypodermic syringes which could be used for the injection of stimulants into horses.

On June 2, 1973, pursuant to the Thoroughbred Horse Race Meeting Corporation statute (hereinafter referred to as Act), Act of December 11, 1967, P. L. 707, *as amended,* §20, 15 P.S. §2670 (Supp. 1974-1975), Norwood requested a hearing. On June 13, 1973, Norwood requested a Bill of Particulars, which was submitted to him on June 15, 1973. Two hearings were held before the Commission, on June 18, 1973 and November 15, 1973, the former for the purpose of receiving evidence and the latter for entertaining argument. Norwood was represented by counsel on both occasions. On December 14, 1973, the Commission issued its adjudication and final order. Appeal to this Court followed.

For reasons discussed later, it will be helpful to set forth in full the brief adjudication of the Commission:

"1. On or about May 30, 1973, and on diverse other occassions [sic] during the period of time from November 1, 1972, through May 30, 1973, the said Jerry Lee Norwood participated in the administration of drugs to horses entered in races at the Penn National Race Track, Grantville, Pennsylvania;

"2. That on or about the same time and place aforesaid, the said Jerry Lee Norwood participated in the switching, interchanging, or replacement, of urine samples taken from said horses subsequent to the running

of said races, in a manner so as to indicate a negative result in drug testing of the urine samples of the horse involved, when as a matter of fact, and to the knowledge and with the participation of the said Jerry Lee Norwood, the sample to be tested would not be the actual sample taken from the horses entered in races as aforesaid;

"3. That on or about the same time and place aforesaid the said Jerry Lee Norwood, paid various sums of money to other persons with whom he was acting in conspiracy to effect the interchanging or replacing of urine samples as aforesaid;

"4. That on or about the same time and place aforesaid, the said Jerry Lee Norwood acted in conspiracy with others in the above stated matters;

"5. That the conduct of the said Jerry Lee Norwood in the above stated matters constituted a fraud in connection with racing at Penn National Race Track, aforesaid;

"6. That the conduct of the said Jerry Lee Norwood violated both the letter and the spirit of the Rules and Regulations of Racing of the Commonwealth of Pennsylvania . . . ."

Section 20 of the Act, 15 P.S. §2670 reads, in relevant part, "The action of the commission in . . . revoking or suspending a license shall be reviewable . . . as provided in the act . . . known as the 'Administrative Agency Law.'"

The Administrative Agency Law, Act of June 4, 1945, P. L. 1388, §44, *as amended*, 71 P.S. §1710.44 reads in pertinent part: "After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections thirty-one to thirty-five inclusive of this act have been violated in the proceeding before the agency, or that any finding of fact made by the agency

and necessary to support its adjudication is not supported by substantial evidence." (Footnote omitted.) Our scope of review under this statute is thus limited.

At the outset we can dispose of Norwood's argument that because only two of the three Commission members were present at the November 15, 1973 hearing, the final action of the Commission was "improper under the laws of the Commonwealth." An examination of the record indicates that the November hearing, at the behest of Norwood's counsel, was devoted to counsel's arguments, all of the direct evidence having been introduced at the June hearing. The June evidentiary hearing was attended by all three Commissioners.[1] The final determination was made subsequent to the hearing and argument, and there is nothing in this record which would permit us to believe that the adjudication and order, signed by all three Commissioners, did not represent the unanimous considered judgment of the entire Commission based upon the record made.

Norwood next argues, in two particulars, that he was denied due process of law and a fair hearing. First, he claims that the Commission threatened to charge his potential witnesses with violations of the state racing laws and regulations if they testified in his behalf. If this allegation were supported by the record it would no doubt cause us great concern. However, the record does not support the claim for it merely contains assertions

---

[1] It appears from the record that Commissioner Moyer was absent from a portion of the June 18, 1973 hearing. The following exchange occurred regarding Commissioner Moyer's absence: "MR. CENDOMA: Will you put on the record that Mr. Moyer will not be present for the taking of the portion of the testimony and it is agreed by Mr. Shane Creamer, Counsel for Mr. Norwood, that the remaining two members of the Commission proceed and conclude the hearing. Agreeable? MR. CREAMER: And Mr. Moyer is going to read the notes of testimony and participate in the final decision. MR. CENDOMA: Mr. Moyer will participate in the making of the final decision based upon his reading of the entire testimony."

by Norwood's counsel that several prospective witnesses were reluctant to testify because they feared possible self-incrimination.

Second, Norwood contends that he was denied due process of law by virtue of the Commission's ex parte investigative activities during the interval between the May 31, 1973 suspension order and the June 18, 1973 evidentiary hearing. Specifically, he complains that on several occasions statements were taken from Dr. Charles L. Myers, a state veterinarian, and James O. Archey, an assistant trainer and associate of Norwood. These statements appear to have been elicited without notice to Norwood and without participation by him. As the evidence developed, the Commission's case seemed to indicate that Norwood, Archey and Myers were acting in concert, and, in fact, disciplinary action was taken by the Commission against both Myers and Archey.[2] Norwood contends that (1) he should have been permitted to participate in the Commission's investigative process and (2) the Commissioners were biased against him because of the evidence developed in the Commission's actions against Archey and Myers.

Both Archey and Myers testified as prosecution witnesses at Norwood's hearing on June 18, 1973 and the record indicates lengthy cross-examination of them. Whatever the practice may be regarding formal depositions in ordinary civil cases, it seems clear that as long as an administrative agency provides a fair opportunity for notice and cross-examination, and makes no effort to conceal or suppress evidence favorable to a defendant, it has satisfied the minimum requirements of due process in this particular.[3] Beyond these restrictions, the

---

[2] In Archey's case, a formal hearing was held on June 13, 1973, six days before Norwood's hearing.

[3] Section 20 of the Act, 15 P.S. §2670 reads, in part: "In the conduct of such hearing, the commission shall not be bound by technical rules of evidence . . . ."

Commission is not obligated to make a defendant privy to its investigative processes. Indeed, in this case, Norwood's close association with Myers and Archey, and the fact of independent disciplinary proceedings against both, undoubtedly alerted him to the possibility that testimony might be forthcoming from them.

Because a separate hearing was held in Archey's case, Norwood claims that the Commission's procedure was prejudicial; however, it seems that his contention reflects little more than dissatisfaction with the Commission's judgment of a witness' credibility. There is no reason why the Commission cannot proceed separately against two violators who allegedly acted in concert. In any event, Archey was offered as the Commonwealth's chief witness in the Norwood hearing and Norwood was given the opportunity to develop any facts he desired through cross-examination of him.

Norwood also argues that the record does not support the final order of the Commission. As noted above, our review of this question is restricted by statute to a determination of whether the adjudication is supported by "substantial evidence." We have said: "Substantial evidence is more than a mere scintilla and must do more than create a mere suspicion of the existence of the fact to be established. It means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Shive v. Bellefonte Area Board of School Directors,* 12 Pa. Commonwealth Ct. 543, 547, 317 A. 2d 311, 313 (1974). (Citation omitted.) Specifically with regard to administrative agency decisions, we said in *A. P. Weaver & Sons v. Sanitary Water Board,* 3 Pa. Commonwealth Ct. 499, 505, 284 A. 2d 515, 518 (1971): " '[S]ubstantial evidence' should be construed to confer finality upon an administrative decision on the facts when, upon an examination of the entire record, the evidence, including the inferences therefrom, is found to be such that a reasonable man, acting

reasonably, *might* have reached the decision . . . ." (Emphasis in original.) *See also St. Andrews Development Co., Inc. v. Pennsylvania Human Relations Commission,* 10 Pa. Commonwealth Ct. 123, 127-8, 308 A. 2d 623, 625 (1973).

Our review of the record permits us to conclude that the evidence against Norwood meets this standard. Archey's testimony alone directly connected Norwood to the administering of prohibited drugs to horses, a concerted and organized scheme to conceal this action through switched urine samples, and the passing of money to those people who made the switches. Despite the existence of some conflicting evidence, there is no doubt that the substantial evidence test has been met. The credibility of the witnesses and the resolution of the conflicts in testimony are for the Commission to determine within its discretionary powers.

Norwood's most serious argument is that the final adjudication of the Commission does not satisfy the requirements of the Administrative Agency Law. The Commission argues that this law is not applicable to the State Horse Racing Commission because the Commission is not one of the agencies enumerated in Section 51 of the Administrative Agency Law, 71 P.S. §1710.51. As pointed out above, the Act establishing the Horse Racing Commission specifically provides that the action of the Commission in revoking a license is reviewable as provided in the Administrative Agency Law. While we recognize that the Act became law subsequent to Sections 31, 32, 33 and 34 of the Administrative Agency Law, 71 P.S. §§1710.31, 1710.32, 1710.33 and 1710.34, and that almost all of the procedural due process provisions of the one Act are contained in the other, our reading of the two statutes permits us to conclude that the legislative intent is to provide the same safeguards. Section 34 of the Administrative Agency Law provides in pertinent part that "All adjudications shall be in

writing, shall contain findings and the reasons for the adjudication . . . ." Section 20 of the Act, 15 P.S. §2670, provides in pertinent part that ". . . the findings of the commission shall be permanently preserved . . . ." and that ". . . the commission shall make a final order in writing, setting forth the reasons for the action taken by it . . . ."

We see little real difference between these two approaches to procedural due process. We conclude that whether an administrative agency of this Commonwealth is rendering an adjudication under the Administrative Agency Law or the horse racing statute, the reviewing court must have an adjudication from which it can determine the facts on which the agency based its conclusions. In this connection, we have said: "It is clear that 'where an administrative agency, pursuant to delegated power, promulgates an order, definitive, basic findings of fact are essential to the validity of its action, and such findings must be sufficiently specific to enable the court in reviewing that action to pass upon questions of law . . . . Failure to make the requisite findings is a violation of due process.' " [Citing *Gottshall v. Batt,* 71 Dauph. 383, 399 (1958).] *Begis v. Industrial Board of the Department of Labor and Industry,* 9 Pa. Commonwealth Ct. 558, 562, 308 A. 2d 643, 646 (1973). *See also McKinley v. State Board of Funeral Directors,* 5 Pa. Commonwealth Ct. 42, 46, 288 A. 2d 840, 842 (1972) ; *State Real Estate Commission v. Bewley,* 1 Pa. Commonwealth Ct. 85, 94-5, 272 A. 2d 531, 535 (1971).

An examination of all the cases cited above indicates that the goal underlying the specificity requirement is meaningful appellate review. To summarize on this point, due process requires that this Court be presented with an adjudication which indicates what the affected party has done or failed to do, and which specific fac-

tual and legal conclusions were made to justify the administrative action.

While the adjudication issued in this case falls short of the ideal, we cannot say that it was too general to allow Norwood or this Court to understand what the Commission found to be Norwood's illegal course of conduct and how and when that conduct violated the Commission's rules and regulations. We admonish the Commission to be more specific in both its findings and conclusions, because given a closer case than the one before us, such an adjudication as was filed in this case could result in a reversal.

Norwood's final argument maintains that the permanent license revocation and the $5,000 fine are excessive penalties and constitute an abuse of discretion by the Commission. He cites to us other cases decided by this Court, involving drugged horses, where trainers were suspended for relatively short periods of time. In none of these cases was the extent of the penalty at issue, and therefore we did not discuss the severity of the penalty. The record in this case shows evidence of a well-organized, concerted effort to obtain an improper racing advantage, and to conceal these activities from those officials responsible for regulating a state licensed racing operation. Apparently the Commission viewed this infraction to be of such magnitude as to warrant severe sanction. We cannot find anything in this record which would permit us to conclude that its adjudication was arbitrary, capricious or unreasonable. We therefore affirm the order of the Pennsylvania State Horse Racing Commission, dated December 14, 1973, revoking the owner's and trainer's license of Jerry Lee Norwood, and assessing a fine of $5,000 against him.