Pennsylvania State Horse Racing Commission *v.*
Alex Anthony DiSanto, Appellant.

Argued February 3, 1977, before Judges KRAMER,
ROGERS and BLATT, sitting as a panel of three.

*Gary M. Lightman,* with him *Mancke & Lightman,* for appellant.

*Larrick B. Stapleton,* for appellee.

OPINION BY JUDGE KRAMER, April 21, 1977:

This is an appeal by Alex A. DiSanto (DiSanto) from an Order of the Pennsylvania State Horse Racing Commission (Commission) dated December 17, 1975. The Order suspends DiSanto's license to race horses in Pennsylvania for a period of five years for violating Rule 1.11 of the Pennsylvania Rules of Racing.[1]

The conduct of Mr. DiSanto deemed to be in violation of Rule 1.11 occurred on September 7, 1975. On that day he telephoned the Penn National Race Track and requested that his horse, Brass Knight, be scratched from the field of horses scheduled to run in the first race. The reason given the track steward for the request was that he and his trainer were having a dispute. DiSanto was informed, however, that unless his horse was objectively found not to be physically able, it was too late to withdraw a horse entered

---

[1] The Pennsylvania Rules of Racing were promulgated by the State Horse Racing Commission by the authority granted under Section 2, Act of December 11, 1967, P.L. 707, 15 P.S. §2652. (State Horse Racing Commission Act.)

to run on that day. Mr. DiSanto thereupon drove to the race track in an attempt to speak with Brass Knight's trainer, Mr. Shevlove, and his jockey Mr. Reynolds.

When he arrived at the paddock area DiSanto observed that the trainer was engaged with other people. Rather than speak with the trainer, he decided to wait just outside the area for the jockey to arrive. Mr. Reynolds came into the area shortly thereafter and was intercepted by DiSanto on his way towards Brass Knight. Though the exact language used by DiSanto is in question, the jockey testified that he was told by DiSanto that he was not to let Brass Knight "get anything." Mr. Reynolds stated that he understood this to mean that he was not to ride the horse to win but to hold Brass Knight back.

The trainer, Mr. Shevlove, also testified to this effect. He stated that he saw DiSanto and the jockey in conversation and walked over to them. He testified that he heard DiSanto tell Reynolds something which, in effect, meant that Brass Knight was to lose the race.

Following the conversation, the jockey told DiSanto that he would have to find another rider. He then began walking with Mr. Shevlove toward the steps to the jockeys' quarters. As they were ascending the steps, however, DiSanto again intercepted them. This time he told Reynolds that he should go ahead and ride Brass Knight but that "he better win or else." Mr. Reynolds refused to ride. Brass Knight was ridden by another jockey and placed third in the race.

The incident was subsequently investigated by William L. Ramsey, a steward at Penn National. This resulted in a hearing before the Board of Stewards on September 28, 1975. The stewards ruled at this meeting that Mr. DiSanto's license privileges should

be suspended for violating Rule 1.11 of the Rules of Racing.[2] The Commission affirmed this ruling and set the period of suspension at five years.

DiSanto raises several arguments on appeal: (1) that Rule 1.11 is impermissibly vague, in violation of his due process rights; (2) that the findings and conclusions of the Commission are not supported by substantial evidence; and (3) that the conduct involved does not warrant a suspension of five years.

DiSanto contends that Rule 1.11 is unconstitutionally vague for two reasons. First, it fails to contain proper guidelines for the stewards to exercise their discretion. Second, the acts included within the scope of Rule 1.11 are not ascertainable from the language of the Rule. Rule 1.11 provides:

> The Stewards may fine, suspend or rule off any person who, in their opinion, has acted to the detriment of racing or violated the Rules.

It is clear that a rule is not vague if a person of ordinary intelligence is capable of determining what conduct the rule encompasses. *See Pennsylvania State Harness Racing Commission v. Dancer*, 16 Pa. Commonwealth Ct. 575, 578, 333 A.2d 196, 198 (1975). Under such a standard, DiSanto's argument fails for the following reasons.

A suspension may be imposed under the language of Rule 1.11 for a violation of any Rule of Racing. Incorporated within Rule 1.11, therefore, are the various other Rules of Racing. These provide both adequate standards for the exercise of discretion by the stewards and sufficient notice to DiSanto that his

---

[2] It should be noted that this writer questioned the authority of the stewards to suspend a license in *Lanchester v. Pennsylvania State Horse Racing Commission*, 16 Pa. Commonwealth Ct. 85, 325, A.2d 648 (1974) (concurring opinion). That question, however, has not been raised by DiSanto and is not now before us.

misconduct was within the scope of Rule 1.11. For example, Rule 1.12 provides that "[t]he commission may . . . suspend or revoke a license issued if it shall find that the applicant . . . attempted any fraud or misrepresentation in connection with racing . . . or has violated or attempted to violate any law with respect to racing in any jurisdiction. . . ."[3] DiSanto's instructions to his jockey not to ride Brass Knight to win, may well be found to be in violation of such a rule.[4] Under such circumstances, DiSanto did not lack notice that his acts were included within the scope of Rule 1.11.

In addition, the language in Rule 1.11 which allows a suspension for acting "to the detriment of racing," indicates that the Rule is applicable to conduct other than that specifically mentioned in the Rules of Racing.[5] This language, as supplemented

---

[3] In keeping with note 2 *supra*, this writer has difficulty making Rules 1.11 and 1.12 jibe, in that a decision by the stewards that particular actions warrant a suspension may be nullified at a much later date by a contrary decision by the Commission.

[4] Though we need not decide the question, such conduct as demonstrated by Mr. DiSanto may violate Rule 1.12 in at least two respects. His conduct can be viewed as an attempt at a misrepresentation or fraud as evidenced by the Commission's conclusion No. 7, "that he [DiSanto] did attempt to alter or vary the outcome of the race."

In addition his conduct may be in violation of 18 Pa. C.S. §4109(a), which provides:

A person commits a misdemeanor of the first degree if, with intent to prevent a publicly exhibited contest from being conducted in accordance with the rules and usages purporting to govern it, he:

(1) threatens any injury to a participant . . . or

(2) tampers with any person, animal, or thing [therein].

[5] Such applicability is in keeping with the authority delegated under Section 2(b)(2) of the State Horse Racing Commission Act, 15 P.S. §2652(b)(2) which provides:

The State Horse Racing Commission shall prescribe rules and regulations for effectually preventing the use

by the various other Rules, further provided DiSanto with sufficient notice that his conduct was of the nature and quality included within the scope of Rule 1.11. This is demonstrated by an examination of Section 15 of the Rules of Racing (Illegal Practices). The rules under this section prohibit actions which affect the speed of a race horse. Though the administering of drugs and the use of electrical and natural devices are specifically covered in the section, it is apparent to a person of reasonable intelligence that instructing a jockey to hold a horse back is an act also affecting the speed of a horse. Under the facts of this case, Rule 1.11 also gave adequate notice that DiSanto's acts were within the scope of the term "to the detriment of racing." *See State Dental Council and Examining Board v. Pollock,* 457 Pa. 264, 277-78, 318 A. 2d 910, 917-18 (1974).

Finally, it should be noted that DiSanto's actions are at the very center or heart of the type of conduct the Legislature wished to regulate under the State Horse Racing Commission Act. This is obvious from the very language of Section 2(b)(2), 15 P.S. §2652(b)(2), which grants authority to the Commission to prescribe rules for the prevention of "improper acts for the purpose of affecting the speed of horses in races in which they are about to participate." Where, as here, conduct is so obviously in conflict with the intent of a regulatory statute provision, rule or regulation, it becomes overly technical to argue that it fails to provide adequate notice as to its scope. *Williams v. United States,* 341 U.S. 97 (1951).

---

of improper devices, the administration of drugs, or stimulants, *or other improper acts for the purpose of affecting the speed of horses in races in which they are about to participate.* (Emphasis added.)

For the foregoing reasons, we conclude that Rule 1.11 contains proper standards for the exercise of discretion, and that it provided DiSanto with sufficient notice that his conduct of September 7, 1975 was within its scope.

Mr. DiSanto also argues that the Commission's findings of fact and conclusions are not supported by substantial evidence. It is clear that this Court must affirm an adjudication of the State Horse Racing Commission unless it is not in accordance with the law or is arbitrary, capricious, or unreasonable because it is not supported by substantial evidence. *Johnson v. State Horse Racing Commission,* 5 Pa. Commonwealth Ct. 458, 290 A.2d 277 (1972). Substantial evidence in such instances is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Norwood v. Pennsylvania Horse Racing Commission,* 16 Pa. Commonwealth Ct. 219, 328 A.2d 198 (1974).

The record reveals that both the trainer and jockey for Brass Knight testified that they understood Mr. DiSanto to mean that his horse was to be held back and was not to win. Though testimony was presented contrary to this understanding, it was for the Commission to weigh the credibility of the witnesses and to resolve conflicts in the testimony. *Norwood, supra,* at 226, 328 A.2d at 203. We conclude that there is substantial evidence in support of the findings and conclusions of the Commission.

Finally DiSanto contends that a five-year suspension for his conduct is excessive. After careful consideration of the record in this case, we agree.[6] Although we recognize that the evidence presented

---

[6] Section 44 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. §1710.44, authorizes this Court to set aside or modify the adjudication if it is not affirmed in full.

against DiSanto is sufficient to sustain the Commission's suspension of his license, the actions are not so gross as to warrant a five-year suspension. The record reveals that DiSanto was emotionally excited when he spoke to his trainer and jockey. In addition, after short reflection, DiSanto countermanded his original directions. Although this certainly does not excuse his actions, we believe that it sufficiently mitigates the degree of the offense committed. Under the facts of this case, the revocation of DiSanto's license for five years is too severe. See *Benford v. Real Estate Commission,* 8 Pa. Commonwealth Ct. 89, 95, 300 A.2d 922, 925 (1973).

ORDER

AND Now, this 21st day of April, 1977, the order of the State Horse Racing Commission dated December 17, 1975, suspending the license privileges of Alex A. DiSanto for five years is modified and said license is suspended for two years, commencing on December 17, 1975, the date fixed by the State Horse Racing Commission.