Carl Striker, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Horse Racing Commission, Respondent.

Argued January 30, 1978, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Clyde P. Bailey,* with him *Bailey and Bailey,* for appellant.

*Larrick B. Stapleton,* for appellee.

OPINION BY JUDGE MENCER, March 28, 1978:

Carl Striker (Striker) appeals to this Court from an order of the Pennsylvania State Horse Racing Commission (Commission) dated December 27, 1976. The order suspended Striker's license to race horses in Pennsylvania for a period of 5 years for violating Rules 1.11, 1.12, 25.01, and A-16 of the Pennsylvania Rules of Racing.[1]

---

[1] The Pennsylvania Rules of Racing were promulgated by the Pennsylvania State Horse Racing Commission by the authority granted under Section 2, Act of December 11, 1967, P.L. 707, *as amended,* 15 P.S. §2652. Finding of fact 4 of the Commission in the instant case reads as follows:

4. That the present Rules of the Commission, in effect at the time of all of the incidents hereinafter described, provided, among others as follows:

Rule 1.11 provides that:

'The Stewards may fine, suspend or rule off any person who, in their opinion, has acted to the detriment of racing or violated the Rules.'

Our scope of review is governed by provisions of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, §44, *as amended*, 71 P.S. §1710.44. *Smith v. Pennsylvania State Horse Racing Commission*, 18 Pa. Commonwealth Ct. 1, 333 A.2d 798 (1975). Section 44 of the Administrative Agency Law describes our review as follows:

Rule 1.12 provides that:

'The Commission may refuse to issue or renew a license or may suspend or revoke a license issued if it shall find that the applicant, or any person who is a partner, agent, employee or associate of the applicant, has been convicted of a crime in any jurisdiction, or is associating or consorting with any person or persons who have been convicted of a crime or crimes in any jurisdiction or jurisdictions, or is consorting or associating with, or has consorted with bookmakers, touts or persons of similar pursuits, or has himself engaged in similar pursuits, or is financially irresponsible, or has been guilty of or attempted any fraud or misrepresentation in connection with racing, breeding, or otherwise, or has violated or attempted to violate any law with respect to racing in any jurisdiction or any rule, regulation or order of the Commission, or shall have violated any rule of racing which shall have been approved or adopted by the Commission, or has been guilty of or engaged in similar related or like practices.'

Rule 25.01 provides that:

'Whenever the Commission, Stewards, Starter or any authorized official acting under these Rules, finds any person or licensee to have been guilty of (a) any act or omission in violation of either the letter or spirit of the Rules of Racing, or (b) any act or omission not covered specifically by these Rules but deemed to require disciplinary action, or (c) any violation of the Act or its amendments, the person or licensee shall be subject to such disciplinary action as the Commission or Stewards shall deem commensurate with the offense committed. Said disciplinary action may take the form of a fine, suspension, fine and suspension, revocation of license, or the ruling off for life, All fines imposed shall not exceed the provisions of the Act.'

After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections thirty-one to thirty-five inclusive of this act [71 P.S. §§1710. 31-.35] have been violated in the proceeding before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

On July 19, 1976, Striker was asked to appear before the Board of Stewards of Commodore Downs. He was questioned as to whether he knew certain persons whom the Commission subsequently determined to be men of poor reputation. Striker denied any relationship with the men, and no evidence to the contrary is of record. Further, Striker was questioned concerning a conversation he had had with Michael Hodges, another jockey at Commodore Downs. Hodges had signed a written statement, which he subsequently disavowed, that in part read:

---

And Rule A-16 provides that:

'No licensee shall at any time associate with, consort with or in any manner communicate with any known gambler, bookmaker, tout, or persons of similar pursuits whether on or off the tracks. If the reputation of such gambler, bookmaker, tout or person of similar pursuit is notorious, the licensee shall be presumed to have knowledge of the fact.

'If any person under the jurisdiction or control of the Commission shall be approached with any offer or promise of a bribe or for any improper, corrupt or fraudulent act of practice in relation to a race or racing, or that any race shall be conducted otherwise than fairly in accordance with the Rules of this Commission, it shall be the duty of such person to report immediately such matter to the Commission or to one of its appointed representatives.'

Striker offered me money if I would pull a horse during the running of a race. I replied, No. No specific horse or race were mentioned.

Striker denied making such a statement and explained that his conversation with Hodges was prompted by seeing Hodges, for no apparent reason, jump off a horse during a race. Striker asserted that he attempted to ascertain from Hodges whether someone was trying to impede horses during the running of races so that he could avoid those horses in some way and still ride his horse to win.

Striker's own testimony could be summarized as follows: that he was suspicious of misconduct on the part of one or more other jockeys; that he sought information from Hodges to clarify the nature and extent of the misconduct; that he planned to use the information obtained to his own benefit in the riding of his mounts in future races; and that he did not disclose his suspicions or information obtained from Hodges to the Commission, its representatives, or anyone in authority at Commodore Downs, although specifically asked whether he knew of anything going on, prior to meeting with the stewards on July 19, 1976.

The Commission made the following so-called conclusion of law:

11. That although there is no evidence that the Petitioner Striker himself was engaged in concert with those other jockeys in arranging to fix races, it is clear that upon [his] own admission he was planning to take advantage of such fixes and such arrangements to plan and benefit his own running.

We have examined the record, keeping in mind that it was for the Commission to weigh the evidence and resolve conflicts in the testimony, *Norwood v. Pennsylvania Horse Racing Commission*, 16 Pa. Commonwealth Ct. 219, 328 A.2d 198 (1974), and we must con-

clude that there is substantial evidence in support of the findings and conclusions of the Commission in so far as Striker's violating Rules 1.11 and A-16 of the Pennsylvania Rules of Racing.[2]

However, Striker contends that a 5-year suspension for his conduct is excessive. After careful consideration of the record in this case, we agree.[3] Although we recognize that the evidence presented against Striker is sufficient to sustain the Commission's suspension of his license, the actions are not such as to warrant a 5-year suspension. The Commission itself concluded that there was no evidence that Striker was engaged in concert with other jockeys in arranging to fix races. In addition, the Commission concluded that Striker engaged in conduct which constituted a violation of Rules 1.12 and 25.01 of the Pennsylvania Rules of Racing but, as we noted in footnote 2, *supra*, this record does not support such a conclusion. Although this certainly does not excuse his actions, we believe that it sufficiently mitigates the degree of the offenses committed. Under the facts of this case, the revocation of Striker's license for 5 years is too severe. *See Pennsylvania State Horse Racing Commission v. DiSanto*, 29 Pa. Commonwealth Ct. 574, 372 A.2d 487 (1977).

---

[2] As noted in the body of this opinion, Striker denied knowing the individuals determined by the Commission to be reputed race fixers and, no evidence to the contrary being of record, we fail to see how a violation of Rule 1.12 is supported by substantial evidence. Rule 25.01 appears to be authority for the Commission or Stewards to subject persons or licensees to disciplinary action for violations of the applicable statutory law or the Pennsylvania Rules of Racing, and accordingly we do not comprehend the basis for the Commission's concluding that Striker was in violation of this rule.

[3] Section 44 of the Administrative Agency Law authorizes this Court to set aside or modify the adjudication if it is not affirmed in full.

ORDER

AND Now, this 28th day of March, 1978, the order of the Pennsylvania State Horse Racing Commission, dated December 27, 1976, suspending the license privileges of Carl Striker for 5 years is modified, and said license is suspended for 2 years, commencing on July 30, 1976, the date fixed by the Pennsylvania State Horse Racing Commission.