Michael Peterson and Calvin Peterson, Petitioners *v.* Commonwealth of Pennsylvania, Pennsylvania State Horse Racing Commission, Respondent.

354

Argued February 5, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Penny Blackwell,* with her *Daniel F. Wolfson,* for petitioners.

*Samuel F. Meisenhelder,* for respondent.

OPINION BY JUDGE BLATT, August 18, 1982:

The petitioner, Michael J. Peterson, appeals from an order of the Pennsylvania State Horse Racing Commission (Commission) which sustained his ejection from Penn National Race Track (Penn National)

and suspended his licensure privileges and the privilege of access to all race track grounds within the Commonwealth until the end of 1982.

On April 17, 1981, track security personnel at Penn National conducted a search of a step van owned by Mike Loe's Saddlery[1] from which the petitioner, the manager of the saddlery, had been selling his employer's wares in the race track enclosure. Two weeks earlier, when the petitioner had driven the van into the enclosure as was his weekly custom, the director of security at the track had checked his records and determined that neither the saddlery nor the petitioner had a current vendor's license, as is required of all vendors who seek entry to the track enclosure, a restricted area of the race track. Section 9 of the Administrative Rules of the Commission, 58 Pa. Code §165.79.[2] When the petitioner made his next weekly visit to the track on April 10, 1981, the security personnel kept the van under surveillance and "decided the next Friday [they] would hope to obtain authorization to search this vehicle to see what he was selling or what he did have in his possession." On April 17, 1981, the director of security obtained authorization from the State Steward to conduct a search. The

---

[1] The saddlery, located in Charlestown, West Virginia, is engaged in vending their products, which include televisions, appliances, clothing, saddles, liniments and other related items, at various race tracks in West Virginia, Maryland, Delaware, New Jersey and Pennsylvania.

[2] 58 Pa. Code §165.79 provides in pertinent part:

The licensee [i.e., a corporation organized pursuant to the Horse Racing Act which conducts any thoroughbred horse race meet with pari-mutuel wagering] shall supervise the practice and methods of so-called merchandise vendors who may have entry to the track enclosure to solicit among the employees and other licensees engaged at the track. . . . Each so-called merchandise vendor shall be licensed by the Commission.

search produced a loaded .22 caliber pistol and vials of injectable vitamins and, upon further search, five vials of injectable medications, sodium iodide and sodium salicytate were found within the van in a box with curry combs. The director of security then ejected the petitioner[3] from the track for not having a valid 1981 vendor's license, for carrying a firearm onto the grounds and for possession of injectable substances. Following a hearing, the Commission affirmed the ejection and suspended the petitioner's licensure and track-access privileges through 1982. The petitioner then filed an application for rehearing and a request for a supersedeas with the Commission and concurrently filed a petition for review with this Court. The Commission denied the petitioner's requests whereupon he sought a stay from this Court, which was denied. He then petitioned the Pennsylvania Supreme Court for a stay, which petition was also denied. The appeal from the order of the Commission is presently before us.

Our scope of review in these cases is limited to determining whether or not constitutional rights were violated, the adjudication was in accord with law, procedural rules were violated or whether or not necessary findings of fact were supported by substantial evidence. *Daly v. Pennsylvania State Horse Racing Commission*, 38 Pa. Commonwealth Ct. 77, 391 A.2d 1134 (1978).

In *Lanchester v. Pennsylvania State Horse Racing Commission*, 16 Pa. Commonwealth Ct. 85, 325 A.2d

---

[3] On the day in question, the petitioner was accompanied by his brother who was also ejected and barred from all Pennsylvania race tracks through the end of 1982. His brother was also an appellant before the Commission and its order was, therefore, applicable to him as well. However, inasmuch as his brother's employment and primary livelihood are not related to the field of horse racing, his brother has withdrawn from this appeal.

648 (1974), we drew upon the standards and considerations governing warrantless regulatory searches set forth in *United States v. Biswell,* 406 U.S. 311 (1972), and recognized horse racing, like liquor and firearms, to be a highly regulated enterprise within this state and, as such, a field within which warrantless statutorily-authorized searches do not violate the reasonable expectations of privacy protected by the Fourth Amendment of the Federal Constitution, U.S. Const. amend. IV. In *Colonnade Catering Corp. v. United States,* 397 U.S. 72 (1970), the United States Supreme Court, in addressing searches in the liquor industry, recognized that because the liquor industry had long been "subject to close inspection," Congress possessed "broad power to design such powers of inspection . . . as deems necessary to meet the evils at hand," *Id.* at 76-77, and that Court recently reiterated the principle that, in the realm of administrative searches, the " 'reasonableness of a warrantless search . . . will depend upon the specific enforcement needs and privacy guarantees of each statute' " and that some statutes " 'apply only to a single industry, where regulations might already be so pervasive that a *Colonnade-Biswell* exception to the warrant requirement could apply.' " *Donovan v. Dewey,* 452 U.S. 594, 601-2 (1981) (quoting *Marshall v. Barlow's Inc.,* 436 U.S. 307, 321 (1978)). While the search which occurred here was not specifically authorized by the Act[4] itself as then in effect, the right of the Stewards or their designees to enter into places within the race track grounds and to inspect and examine the personal property and effects of any persons who were within

---

[4] The Thoroughbred Horse Race Meeting Corporation Act (Act), Act of December 11, 1967, P.L. 707, *as amended,* 15 P.S. §§2651-2675, repealed by the Act of December 17, 1981, P.L. 485. A similar act, entitled the Race Horse Industry Reform Act, is now found at 4 P.S. §§325.101-325.404.

those places was conferred by Rules[5] enacted pursuant to a legislative mandate that the Commission "shall prescribe rules and regulations for effectually preventing the use of improper devices, the administration of drugs or stimulants, or other improper acts for the purpose of affecting the speed of horses in races in which they are about to participate." Section 1(b)(2) of the Act, 15 P.S. 2652(b)(2). *Lanchester*. The Commission has been invested with authority to adopt rules and regulations by which to carry out the purposes and provisions of the Act and to prevent cir-

---

[5] Section 15.09 of the Rules of Racing, 58 Pa. Code §163.312, provides:

Possession of illegal drug devices.

The Stewards or the Commission, or any of them, *or their designees,* shall have the right to enter into, or upon the buildings, stables, rooms, or other places within the grounds of such an association, and to examine the same, and to inspect and examine the personal property and effects of *any person, within such places;* and every person who is hereafter granted a license by the Commission, by accepting his license, does consent to such search, and to the seizures of any such hypodermic syringes, hypodermic needles, or other devices, and any drugs, stimulants, or narcotics, apparently intended to be, or which could be, used in connection therewith, or any appliances—electrical, mechanical, or otherwise—other than the ordinary equipment, of such nature as could affect the speed or racing condition of a horse. (Emphasis added.)

and Section 11 of the Administrative Rules, 58 Pa. Code §165.81 provides:

Inspection of premises.

The Commission shall have the right to authorize a person or persons to enter in or upon the stables, rooms, or other places within the track enclosure or places where horses are kept, for the purpose of and to inspect and examine the personal effects, or property within such places of every employe, trainer, jockey, stable foreman, groom, authorized agent, veterinarian, or other person licensed by the Commission, *or required to be so licensed.* (Emphasis added.)

cumvention and evasion of it. Section 1(a) of the Act, 16 P.S. §2652(a), and it is well-settled that properly authorized rules and regulations have the force and effect of law. *Good v. Wohlgemuth,* 15 Pa. Commonwealth Ct. 524, 327 A.2d 397 (1974). In *Lanchester,* this Court upheld the validity of a forceable warrantless search of a trainer's truck which was present on the racing grounds during a meet on the basis that such a search did not intrude upon the justifiable expectations of privacy of one who, by entering and continuing in a heavily-regulated endeavor such as horse racing, was aware that he would be subject to frequent and unannounced inspections. In such cases, "[t]he potentiality for abusive searches is limited, and, given the obvious impossibility of *effectually* preventing the future use of illegal drugs and devices were a warrant required before a search, the governmental interest must prevail." *Id.* at 94, 325 A.2d at 653 (emphasis in original). The director of security testified that he had obtained approval from the State Steward prior to initiating the search and, here, as in *Lanchester,* a vehicle located within the restricted area of the track is an appropriate object of a search conducted under the authorization by Section 15.09 of the Rules of Racing, 58 Pa. Code §163.312.

The petitioner here, however, points to Section 15.09 of the Rules of Racing, and contends that inasmuch as he had not procured a 1981 vendor's license,[6] he had not voluntarily consented to a search of the van. Section 15.09 provides in pertinent part that:

[E]very person who is hereafter granted a license by the Commission, by accepting his license, does consent to such search, and to the seizure of . . . any drugs, stimulants or narcot-

---

[6] The petitioner had had valid vendor's licenses for the years 1979 and 1980.

ics, apparently intended to be or which could be, used in connection therewith . . . of such nature as could affect the speed or racing condition of a horse.

In *Lanchester* we said that by submitting his signed application for a license, the trainer had given written consent to a search. In so stating, we recognized, however, that this was merely "[a]n *additional* ground," *Id.* at 94, 325 A.2d at 653 (emphasis added), upon which to sustain the validity of the search.

Where an individual entering a traditionally regulated licensed field such as horse racing consents [by submitting his license application and accepting his license] to a warrantless search of his person or premises directly related to or involved in that endeavor, his consent is held to constitute a waiver of his Fourth Amendment protections within the limits of valid regulation.

*Id.* at 95, 325 A.2d at 653. However, in a closely regulated industry where "[l]arge interests are at stake, and inspection is a crucial part of the regulatory scheme," *Biswell,* 406 U.S. at 315, the validity of a search does not rest upon consent. "In the context of a regulatory inspection system of business premises that is carefully limited in time, place, and scope the legality of the search depends not on consent but on the authority of a valid statute." *Id.* In Pennsylvania, pervasive regulation of the horse racing industry by the State has been accomplished by statute and by rules promulgated thereunder by the Commission, a statutorily created arm of the state.

The element which distinguishes these enterprises from ordinary businesses is a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware. ". . . The businessman

in a regulated industry in effect consents to the restrictions placed upon him.''

*Marshall v. Barlow's,* 436 U.S. at 313 (quoting from *Almeida-Sanchez v. United States,* 413 U.S. at 266, 271 (1973)). The petitioner here had obtained vendor's licenses in 1979 and 1980 and was certainly no stranger to the fact that horse racing was a ''closely regulated'' industry ''long subject to close supervision and inspection,'' *Colonnade,* 397 U.S. at 77, and his participation in it, brought him within the restrictions attendant upon it, including a relinquishment of his expectation of privacy while engaged therein. ''Certain industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise.'' *Marshall,* 436 U.S. at 313 (citation omitted). A reasonable expectation of privacy exists when an individual has exhibited an actual expectation of privacy and when the individual's subjective expectation of privacy is one that society is prepared to recognize as ''reasonable''. *Katz v. United States,* 389 U.S. at 347 (1967). Although the petitioner here had failed to obtain a 1981 license, he relinquished his expectation of privacy once he entered into a restricted area of the race track and vended his wares thereon. By performing within the industry as one licensed by the Commission overseeing the industry, he gave his implied consent to a warrantless search of his person and premises pursuant to Section 15.09 of the Rules of Racing, 58 Pa. Code §163.312, and this consent operated as ''a waiver of his Fourth Amendment protections within the limits of valid regulation.'' *Lanchester,* 16 Pa. Commonwealth Ct. at 95, 325 A.2d at 653.

Section 15.09 of the Rules of Racing, grants a right to the ''Stewards or the Commission . . . *or their designees,* . . . to enter into, or upon . . . other places within the grounds and to examine the same, and to inspect

and examine the personal property and effects of *any person,* within such places. . . ." (Emphasis added.) The track security personnel obtained permission from the State Steward to search the step van which the petitioner had brought onto the restricted area of the race track. As the Steward's designees, they conducted a valid warrantless search of the van and, having found a loaded pistol in a drawer in the van, had reasonable grounds to then also subject the petitioner to a body frisk to search for other possible weapons. *Terry v. Ohio,* 392 U.S. 1 (1968).[7] The search was one conducted in a highly regulated industry in accordance with rules promulgated by the Commission under its statutory mandate and, as such, did not offend the Fourth Amendment of the Federal Constitution, and the fruits of the search were therefore admissible into evidence at the hearing.

The petitioner contends that certain of the Commission's findings were not supported by substantial evidence. It is well-settled that substantial evidence is relevant evidence such as a reasonable mind might accept to support a conclusion. *Pennsylvania State Horse Racing Commission v. Di Santo,* 29 Pa. Commonwealth Ct. 574, 372 A.2d 487 (1977). The petitioner objects to several of the findings of fact and asserts that the Commission's findings that he was in possession of injectable substances is not supported by evidence in the record. The questioned findings merely reported the fact of the search and identified the items found as a result thereof; in the subsequent discus-

---

[7] *Terry v. Ohio* held that a police officer who has reason to believe that the person he is dealing with may be armed is entitled to conduct a carefully limited search of outer clothing for weapons which might be used to assault him. Section 2662.1(a) of the Act, 15 P.S. §2662.1(a) states that track security personnel "shall possess the powers and duties of a peace officer with respect to the enforcement of the criminal laws of the Commonwealth within the race meeting grounds or enclosure."

sion, however, the Commission did discuss the petitioner as having been in "possession of injectable materials and a loaded revolver in the restricted area of the race track." "Possession standing alone but unimpeached is evidence of title. It is the lowest kind of title, but is good against any one not having a better one." *Garlock v. Fulton County*, 116 Pa. Superior Ct. 50, 52, 176 A. 38, 39 (1935). "Possess", as used in criminal statutes, usually signifies an intentional exercise of control over a designated thing, accompanied by a knowledge of its character. *State v. Reed*, 34 N.J. 554, 170 A.2d 419 (1961). The petitioner testified that when shown the vials unearthed in the search, he told the security personnel that he had no idea what they were and that he had not hidden them on the van. In addition, James Lloyd, the co-owner of the saddlery, testified that he had been given four vials of liquid aspirin and one vial of sodium iodide for his aging hunting horse who had arthritic and respiratory problems and that, not wanting the medication lying on the dashboard of the van when on the grounds of a West Virginia track where he had worked several days earlier, he had placed them in a box with curry combs and he had subsequently forgotten either to remove them before going home or to telpehone the petitioner to tell him they were on the truck. He testified that the petitioner consequently had "absolutely no knowledge that I had put those on there." The Commission, in Finding of Fact No. 12 stated:

> The co-owner of Mike Loe's saddlery, James L. Lloyd, admitted to having placed the injectable medications in the box of curry combs for the reason that he knew that they would have to be concealed in order to allow him to drive the step van vehicle on race track grounds.

Examination of the record fails to reveal evidence, of any knowing, intentional exercise of control over the

medications by the petitioner, and neither the evidence nor the findings of the Commission support a conclusion that the petitioner was in possession of the injectable substances. On the other hand, however, a review of the record indicates that the petitioner did, for purposes of our examination, exercise knowing, intentional control, and therefore "possession", over the gun. He testified that he did not have a permit for the gun but that the saddlery did, and that after having had the windshield of the van shot out several months earlier while driving to a Maryland race track, he had begun to carry the gun on the van.

The petitioner finally objects that the penalty imposed by the Commission was excessive and unreasonable. Section 12.1(a) of the Act, 15 P.S. §2662.1(a), provides in pertinent part that security personnel are "authorized and empowered to . . . eject from the race meeting grounds or enclosure any persons suspected of violating any rule or regulation promulgated by the . . . Commission." The petitioner's testimony clearly established that he carried a loaded, unregistered firearm in a vehicle, in violation of Section 6106(a) of the Pennsylvania Uniform Firearms Act, 18 Pa. C. S. §6106(a),[8] and that he brought an unlicensed, unregistered firearm within the track enclosure, in violation of Section 1.16 of the Rules of Racing, 58 Pa. Code §163.9.[9] The search disclosed that by having a for-

---

[8] 18 Pa. C. S. §6106(a) provides in pertinent part that:

No person shall carry a firearm in any vehicle . . . except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter.

The petitioner's situation did not fall within any of the enumerated exceptions to subsection (a) which are set forth in subsection (b).

[9] Section 1.16 of the Rules of Racing provides in pertinent part that:

No licensee . . . shall possess any firearm within the enclosure unless he shall have therefore obtained a valid and subsisting permit for the same from the appropriate

eign substance within the area of the race track the petitioner was also in violation of Section 15.02(a)(3) of the Rules of Racing, 58 Pa. Code §163.302(a)(3).[10] The fruits of the search provided data which established well beyond the level of suspicion that the petitioner was in violation of Commission rules, and the track security personnel, therefore, acted well within their authority in ejecting him from the race track.

Although the evidence presented is sufficient to sustain the Commission's affirmance of his ejection, it is not sufficient to support a suspension of his licensure and entry privileges for a period of almost two years. Evidence was given by both the petitioner and the owner that up until the time of discovery of the vials of injectables by security personnel, the petitioner had been totally unaware that the vials had been secreted and were present in a box in the van, and the Commission did not find that the petitioner had been in possession of the vials. Therefore, the Commission's ultimate statement in its discussion that the petitioner had had possession of the injectable substances found in his employer's van was not supported by substantial evidence in the record or by the findings of fact. Furthermore, at the hearing, counsel for the Commission sought a penalty "only as to the failure to hold a license and the possession of the firearm."[11] We believe, therefore, that "[u]nder the facts of this

---

police authority . . . and unless the same shall have been registered in writing with the Commission security office at the track and the Director of Security of the Association.

[10] Section 15.02(a)(3) of the Rules of Racing provides in pertinent part:

No person other than a veterinarian shall have any foreign substance, within the area of the race track complex, which can be administered internally to a horse by any route, except for an existing condition and as prescribed by a veterinarian.

[11] Reproduced Record, p. 83.

case ... [the penalty] is too severe." *Di Santo,* 29 Pa. Commonwealth Ct. at 581, 372 A.2d at 491.

We will, therefore, affirm the order of the Commission as to its affirmance of the ejection and its imposition of additional penalties, but will modify those penalties to encompass only the period of time already elapsed as of the date of filing of this order and opinion.

ORDER

AND Now, this 18th day of August, 1982, the order of the Pennsylvania State Horse Racing Commission is affirmed insofar as it upholds the validity of the April 17, 1981 ejection of Michael J. Peterson from the Penn National Race Track but insofar as it suspends his privilege of licensure in any capacity by the Commission and denies him the privilege of access to any and all grounds of any race track within the Commonwealth of Pennsylvania for the remainder of 1981 and all of calendar year 1982, it is modified and reduced to that period of time which has already elapsed as of the date of filing of this order.

Judge MENCER did not participate in the decision in this case.