Louis **PUNTOLILLO**

v.

**NEW HAMPSHIRE RACING COMMISSION et al.**

**Civ. A. No. 74-38.**

United States District Court,
D. New Hampshire.

Feb. 28, 1975.

James J. Barry, Jr., Malloy & Sullivan, Manchester, N. H., for plaintiff.

John L. Ahlgren, State of New Hampshire, Concord, N. H., for New Hampshire Racing Commission.

Robert A. Wells, McLane, Graf, Greene & Brown, Raulerson & Middleton, Manchester, N. H., for New Hampshire Trotting and Breeding Ass'n, Inc.

### ORDER ON MOTION TO DISMISS

BOWNES, District Judge.

Plaintiff is a harness driver of Italian national origin. He brings suit against New Hampshire Racing Commission (Commission) and New Hampshire Trotting and Breeding Association, Inc. (Association) alleging that the defendants interfered with his employment opportunities by discriminating against him because of his national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The alleged discrimination took place during 1971 and 1972.

Defendant Commission is a regulatory state agency which is responsible for promulgating "rules and regulations for the holding, conducting, and operating of all running or harness horse races or meets for public exhibition and for the

operation of race tracks on which any such race or meet is held." NH RSA 284:6 and 12. In order to race in New Hampshire, a harness driver must obtain a license from the Commission.[1] Defendant Association conducts the harness racing activities at Rockingham Park, Salem, New Hampshire.

In a previous opinion, I found that an employment relationship existed between the parties. Puntolillo v. New Hampshire Racing Commission, 375 F.Supp. 1089 (D.N.H.1974). The Commission now moves to dismiss the complaint alleging that, as a state agency, it was excluded from the provisions of Title VII prior to March 24, 1972.

Prior to March, 1972, the term "employer" was defined in Section 2000e(b) as:

A person engaged in an industry affecting commerce . . . .

Person was defined as:

one or more individuals, labor unions, partnerships, associations, . . . . § 2000e(a).

State agencies were not within the protective purview of Title VII. Schattman v. Texas Employment Commission, 459 F.2d 32 (5th Cir. 1972), cert. denied 409 U.S. 1107, 93 S.Ct. 901, 34 L.Ed.2d 688 (1973).

■ Congress, aware that millions of state employees were not protected by Title VII, amended the statutory language so that "person" now includes:

governments, governmental agencies, political subdivisions, . . . . § 2000e(a). Equal Employment Opportunity Act of 1972.

The legislative history clearly indicates that the amendment was intended to facilitate the remedial process for state employees.

Presently approximately 10.1 million persons are employed by State and local governmental units. This figure represents an increase of over 2 million employees since 1964. Indi-

cations are that the number of employees in State and local government will continue to increase, perhaps even more rapidly. Few of these employees, however, are afforded the protection of an effective forum to assure equal employment. The bill amends section 701 of the Civil Rights Act of 1964 (section 2 of the bill) to include State and local governments, governmental agencies and political subdivisions within the definition of an "employer" under Title VII. All State and local government employees would under the bill have access to the remedies available under the Act. 92nd Congress, 2d Sess., U.S.Code Cong. and Admin.News at p. 2152 (1972).

The legislative amendment became effective on March 24, 1972.

Defendant Commission, in support of its motion to dismiss, has submitted the affidavits of John E. Furgal and Lawrence V. Wilcox. Mr. Furgal is the Executive Secretary of the Commission and is keeper of the records relating to the issuance of harness racing licenses. His uncontroverted affidavit states that the plaintiff did not seek to obtain a license from the Commission after January of 1972. Mr. Wilcox is the official Associate Judge representing the Commission at Rockingham Park. One of his duties is to review harness racing license applications. His uncontroverted affidavit states that the plaintiff did not apply for a harness racing license subsequent to January of 1972.

The alleged discrimination took place before the Congressional amendment of March 24, 1972. Prior to the amendment, the State could not be sued under Title VII of the Act.

### THE ISSUE

The issue is whether the 1972 amendment allowing states and their agencies to be sued pursuant to Title VII is to be retroactively applied.

---

1. *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 2.*

## THE LAW

■ Prior to the passage of the 1972 amendment, states could not discriminate against persons on the basis of their national origin. *Cf*. Espinoza v. Farah Mfg. Co., 414 U.S. 86, 89, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973). In addition, state action which arbitrarily discriminated against persons because of their citizenship or lack thereof was held to be violative of the Fourteenth Amendment. Takahashi v. Fish & Game Commission, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948); Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915). Accordingly, as applied to state employees, the 1972 amendment did not create any substantive rights, but was a remedial statute.

The Constitution is as imperative in its prohibition of discrimination in state and local government employment as it is in barring discrimination in Federal jobs. The courts have consistently held that discrimination by state and local governments, including job discrimination, violates the Fourteenth Amendment and is prohibited.

While an individual has a right of action in the appropriate court if he has been discriminated against, the adequacy of protection against employment discrimination by state and local governments has been severely impeded by the failure of the Congress to provide Federal administrative machinery to assist the aggrieved employee. . . .

. . . Although the aggrieved individual may enforce his rights directly in the Federal district courts, this remedy, as already noted, is frequently an empty promise due to the expense and time involved in pursuing a Federal court suit. It is unrealistic to expect disadvantaged individuals to bear the burden.

The Committee feels that it is an injustice to provide employees in the private sector with an administrative forum in which to redress their grievances while at the same time, denying a similar protection to the increasing number of state and local employees. Accordingly, H.R. 1746 provides the administrative remedies available to employees in the private sector should also be extended to state and local employees. 92 Congress, 2d Sess., U.S. Code Cong. and Admin.News at pp. 2153–2154 (1972).

■ In determining whether a statute should be retroactively applied, the rule is that procedural statutes which are remedial are "generally applicable to cases pending at the time of enactment . . . (unless) retrospective application . . . will work a manifest injustice by destroying a vested right." Koger v. Ball, 497 F.2d 702, 706 (4th Cir. 1974). States, of course, have no vested right to discriminate against persons on account of their national origin.

The retroactive application of Title VII to state employment finds analogous support in decisions which retroactively applied Title VII to federal employment. Prior to the 1972 amendment, Title VII did not cover federal employment. In determining whether the 1972 amendment should be retroactively applied, the majority of decisions have held that the amendment is remedial in nature and should be given retroactive application provided that the charge of discrimination was pending before an administrative agency on March 24, 1972.[2]

---

2. Koger v. Ball, 497 F.2d 702 (4th Cir. 1974); Ficklin v. Sabatini, 378 F.Supp. 19 (E.D.Pa.1974); Fears v. Catlin, 377 F.Supp. 291 (D.Colo.1974); Jackson v. U. S. Civil Service Commission, 379 F.Supp. 589 (S.D. Tex.1973); Harrison v. Butz, 375 F.Supp. 1056 (D.D.C.1973); Henderson v. Defense Contract Admin. Serv. Reg., N.Y., 370 F. Supp. 180 (S.D.N.Y.1973); Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C.1973); Johnson v. University of Pittsburgh, 359 F.Supp. 1002 (W.D.Pa.1973); Walker v. Kleindienst, 357 F.Supp. 749 (D.D.C.1973). *But see* Jones v. United States, 376 F.Supp. 13 (D. D.C.1974); Henderson v. First National Bank of Montgomery, 360 F.Supp. 531 (M. D.Ala.1973); Hill-Vincent v. Richardson, 359 F.Supp. 308 (N.D.Ill.1973), holding that Title VII should not be given retroactive application.

In *Walker, supra,* 357 F.Supp. at 751–752, the court stated:

> The 1972 Act is clearly remedial. The Act fits the classic definition of legislation which affords a remedy or facilitates remedies already existing for the enforcement of rights and redress of injuries, * * * The general rule of construction is that a remedial statute shall be so construed as to make it effect its evident purpose and if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied. The 1972 Act should be construed to cover pending charges of discrimination in federal employment since the statute "Takes away no substantive right, but . . . simply changes the tribunal that is to hear the case."

Plaintiff, therefore, comes within the purview of Title VII, provided that his charge of discrimination was pending before the Civil Service Commission or was at some other stage of the remedial process on March 24, 1972. A failure to institute administrative relief prior to the effective date of the amendment prohibits the retroactive application of the amendment. *Cf.* Cleveland Board of Education v. LaFleur, 414 U.S. 632, n. 8, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).[3]

Plaintiff's complaint does not specifically state when he sought administrative relief. The pleadings disclose that he received a Right to Sue Notice on November 15, 1973. In order to avail himself of Title VII, the plaintiff must disclose whether a complaint of discrimination was pending before an administrative agency on March 24, 1972. Plaintiff's Title VII suit must be dismissed if he is not able to establish that he was in the administrative process on March 24, 1972.

Defendant Association moves to dismiss the suit on grounds of lack of jurisdiction. The Association alleges that since it was not a named party before the Equal Employment Opportunity Commission (EEOC), plaintiff has failed to exhaust his administrative remedies and, therefore, has not complied with the Act. In Bowe v. Colgate-Palmolive Company, 416 F.2d 711, 719 (7th Cir. 1969), the court stated:

> It is a jurisdictional prerequisite to the filing of a suit under Title VII that a charge be filed with the EEOC against the party sought to be sued. 42 U.S.C. § 2000e–5(e). This provision serves two important purposes. First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law.

Numerous cases have followed the *Bowe* interpretation. *See* Evans v. Sheraton

---

3. Courts in determining whether a statute should be given retroactive application have made a distinction between those cases which were in the remedial process on the date of the Act's effectiveness and those cases which were not. Clark v. Goode, 499 F.2d 130, 131 (4th Cir. 1974). *See also LaFleur, supra,* 414 U.S. at 639, n. 8, 94 S. Ct. at 796 where the court stated:

> The practical impact of our decision in the present cases may have been somewhat lessened by several recent developments. At the time that the teachers in these cases were placed on maternity leave, Title VII of the Civil Rights Act of 1964, 78 Stat. 253, 42 U.S.C. § 2000e *et seq.,* did not apply to state agencies and educational institutions. [42 U.S.C. §§ 2000e(b) and 2000e–1]. On March 27, 1972, however, the Equal Employment [Opportunity] Act of 1972 amended Title VII to withdraw those exemptions. Pub. L. 92–261; 86 Stat. 103. Shortly thereafter, the Equal Employment Opportunity Commission promulgated guidelines providing that a mandatory leave or termination policy for pregnant women presumptively violates Title VII. * * * While the statutory amendments and the administrative regulations are, of course, inapplicable to the cases now before us, they will affect like suits in the future.

*LaFleur* is distinguishable because the plaintiffs did not seek administrative relief, but sought jurisdiction under 42 U.S.C. § 1983. *Id.* at 636, 94 S.Ct. 791. Another distinguishable factor is that prior to *LaFleur,* the law was in a state of flux as to whether states could require a mandatory leave program for pregnant women.

Park Hotel, 503 F.2d 177, 181 (D.C.Cir. 1974) and the cases cited therein. Other courts have suggested that the *Bowe* rule might be less than absolute. *Evans, supra*; Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F. 2d 979 (1973); Taylor v. Armco Steel Corp., 373 F.Supp. 885, 911–912 (S.D. Tex.1973).[4]

Although I do not believe that the failure to charge a party before the EEOC is an insurmountable barrier to the later joining of a party to a civil rights suit, plaintiff's failure to bring the Association before the EEOC and afford the parties "at least an opportunity to reach a more amicable conciliation out of court," Beverly v. Lone Star Lead Const. Corp., 437 F.2d 1136, 1139 (5th Cir. 1971), bars plaintiff from instituting suit pursuant to Title VII.

Although plaintiff may be barred from instituting Title VII suit against the Association, there is still available the traditional civil rights statutes upon which federal jurisdiction can be based. 42 U.S.C. § 1983. Waters v. Wisconsin Steel Works of International Harvester Co., 427 F.2d 476 (7th Cir.), cert. denied 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

Horse racing is a state monopoly. It appears from the pleadings that the Association conducts the horse racing activities at Rockingham Park in conjunction with the Commission and other state agencies. In addition, an essential by-product of horse racing is the raising of state revenues. I find that the Association plays an integral role in the state monopoly of horse racing and that it acts under color of state law. Plaintiff is given leave to amend his complaint to allege a violation of 42 U.

S.C. § 1983. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S. Ct. 856, 6 L.Ed.2d 45 (1961); Lavoie v. Bigwood, 457 F.2d 7 (1st Cir. 1972).

So ordered.

---

4. Courts have made an exception to the jurisdictional prerequisite that a charge must be filed with the EEOC before federal jurisdiction attaches in the following situations: when the party not named before the EEOC is an indispensable party, *Evans, supra,* 503 F.2d at 183; when a union stands in an agency relationship to the party properly charged before the EEOC with respect to the alleged acts of discrimination, Sokolowski v. Swift & Co., 286 F.Supp. 775 (D. Minn.1968); and when a union has been critically involved in the collective bargaining agreement, Held v. Missouri Pacific Railroad Co., 373 F.Supp. 996 (S.D.Tex.1974).