Nikitas LEMBEROS, Plaintiff,

v.

LAUREL RACECOURSE, INC., Frank J. Brady, General Manager, Laurel Racecourse, Inc., Louis Raffetto, Racing Secretary, Laurel Racecourse, Inc., Maryland State Fair and Agricultural Society, Inc., William Linton, Past General Manager, Timonium Race Track, Howard M. Mosner, Jr., Acting General Manager, Maryland State Fair and Agricultural Society, Inc., Southern Maryland Agricultural Association of Prince George's County, Maryland, Inc., Alvin A. Karwacki, General Manager, Southern Maryland Agricultural Association of Prince George's County, Maryland, Inc., Lawrence J. Abbundi, Racing Secretary, Southern Maryland Agricultural Association of Prince George's County, Maryland, Inc., Maryland Jockey Club, Charles J. Lang, General Manager, Maryland Jockey Club, James Fred Colwill, Chief Steward, Maryland Racing Commission, Lawrence R. Lacey, Associate Steward, Maryland Racing Commission, Edward Litzenberger, Associate Steward, Maryland Racing Commission, Clinton P. Pitts, Jr., Associate Steward, Maryland Racing Commission, Maryland Racing Commission, Defendants.

Civ. No. H–79–710.

United States District Court,
D. Maryland.

May 22, 1980.

Warren K. Rich and Niles, Barton & Wilmer, Annapolis, Md., for plaintiff.

William F. C. Marlow, Jr., and Thomas J. Peddicord, Jr., Towson, Md., for defendants Maryland State Fair and Agricultural Society, Inc., William Linton and Howard M. Mosner, Jr.

Nancy E. Paige and Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., for defendants Laurel Racecourse, Inc., Frank J. Brady and Louis Raffetto.

Joseph M. Roulhac and Smith, Somerville & Case, Baltimore, Md., for defendants Maryland Jockey Club and Charles J. Lang.

James L. Shea and Semmes, Bowen & Semmes, Baltimore, Md., for defendants Southern Maryland Agricultural Ass'n, Inc., Alvin A. Karwacki and Lawrence J. Abbundi.

Alan M. Foreman, Asst. Atty. Gen., Baltimore, Md., for defendants Maryland Racing Com'n, James Fred Colwill, Lawrence R. Lacey, Edward Litzenberger and Clinton P. Pitts, Jr.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, District Judge.

This civil action has been brought by a professional trainer of thoroughbred race horses against fifteen individual and corporate defendants and one governmental entity. Plaintiff alleges that the defendants have conspired to deprive him of his ability to pursue his occupation in the State of Maryland by preventing him from obtaining stall space for his horses at the four major race tracks in Maryland and thereby precluding him from obtaining entry of his horses in races at these tracks. Plaintiff asserts that, since he was not afforded the opportunity for a hearing before this action was taken, the defendants have violated his rights under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. He has further alleged that he is entitled to relief under 42 U.S.C. § 1983. Other constitutional claims are also advanced, and finally plaintiff alleges that the defendants have tortiously interfered with several of his contracts.

Named as defendants in this case are the Laurel Racecourse, Inc., Frank J. Brady (its General Manager) and Louis Raffetto (its Racing Secretary); the Maryland State Fair and Agricultural Society, Inc., William Linton (formerly its General Manager) and Howard M. Mosner, Jr. (its General Manager); the Southern Maryland Agricultural Association of Prince George's County, Maryland, Inc.,[1] Alvin A. Karwacki (its General Manager) and Lawrence J. Abbundi (its Racing Secretary); and the Maryland Jockey Club and Charles J. Lang (its General Manager). The four corporate defendants operate Laurel, Bowie, Timonium and Pimlico, which are the four major horse race tracks in the State of Maryland. All the individual defendants are currently serving as general managers or racing secretaries of the defendant corporations or were serving in one of those capacities at the time of the alleged violations. These eleven defendants will be collectively referred to as the "private defendants."

Also named as defendants are the Maryland Racing Commission (hereinafter the "Commission"), an agency of the State of Maryland which regulates horse racing in the State, and racing stewards James Fred Colwill, Lawrence R. Lacey, Edward Litzenberger and Clinton P. Pitts, Jr. Defendant Colwill is the Chief Steward and defendants Lacey, Litzenberger and Pitts are Associate Stewards appointed by the Commission.

Plaintiff's complaint contains six Counts. His first and second Counts allege due process and equal protection claims arising directly under the Fourteenth Amendment. His third Count incorporates claims asserted in the first two Counts and is based on § 1983. In Count IV, plaintiff contends that a Commission Rule[2] which forbids a trainer from occupying stalls at a race track without the written permission of the track management violates the Fourteenth Amendment. Plaintiff's fifth Count asserts that the Commission's broad delegation of powers to the racing stewards is unconstitutionally vague and also constitutes an unlawful delegation of legislative functions in

violation of the Maryland Declaration of Rights. In the final Count, plaintiff charges that the defendants have tortiously interfered with certain of his contracts. Counts I to IV are asserted under federal law, Count V under federal and state law and Count VI under state law.

Plaintiff seeks $1.3 million in compensatory damages, $2 million in punitive damages, attorneys' fees and costs. He also requests a declaration that Commission Rule 09.10.01.57(v) violates the Federal and State Constitutions. Finally, plaintiff seeks injunctive relief prohibiting the defendants from arbitrarily denying him stall space at the State tracks without cause and without notice and a hearing.

Presently pending before the Court is a motion to dismiss the complaint, a motion for summary judgment and three motions to dismiss and/or for summary judgment, filed on behalf of all sixteen defendants. All of the pending motions will be treated as motions to dismiss or, in the alternative, for summary judgment. *See* Rule 12(b), F.R.Civ.P. Various affidavits and exhibits have been filed in support of and in opposition to the pending motions. Extensive briefs have been submitted by the parties, and oral argument on the motions has been heard in open court.

For the reasons hereinafter stated, the motions of the private defendants to dismiss or for summary judgment will be granted as to all Counts and judgment will be entered in favor of all eleven private defendants. The motion for summary judgment of the Commission and the racing stewards will be granted with respect to Count V, but will be denied with respect to Counts I, II, III, IV and VI.

■ The principles of law which are applicable to the granting or denial of a motion to dismiss or a motion for summary judgment are well known. A motion to dismiss should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

---

**1.** The correct name of this defendant is Southern Maryland Agricultural Association, Inc.

**2.** COMAR 09.10.01.57(v).

would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Under Rule 56, F.R. Civ.P., summary judgment may be entered if the pleadings, affidavits and other facts established by the record show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

## I

*The motions of the private defendants*

The claims asserted by the plaintiff against the four groups of private defendants are identical and the motions filed by these defendants raise the same questions. In general, the private defendants seek dismissal of the complaint or summary judgment on the following grounds:

1. That Counts I through IV require proof of state action and the record here establishes that defendants' actions did not constitute state action within the meaning of 42 U.S.C. § 1983 and the Fourteenth Amendment;

2. That the record here establishes that plaintiff has not been deprived of any right guaranteed by the Constitution or the laws of the United States;

3. That Count V fails to state a claim against the defendants because it neither makes an allegation against them nor seeks relief from them;

4. That defendants are not liable as a matter of law to the plaintiff for tortious interference with any contracts which he may have entered into, as alleged in Count VI; and

5. That this Court lacks subject matter jurisdiction of Counts V and VI, insofar as the private defendants are concerned.

### (1) *State action*

In Counts I through III, the plaintiff has alleged that the defendants denied his application for stall space at their tracks without providing him with notice or an opportunity for a hearing, in violation of the Due Process and Equal Protection Clauses of the Constitution and 42 U.S.C. § 1983.[3] In Count IV, he has contended that a Commission Rule violates the Fourteenth Amendment.

■ With reference to the claims asserted by the plaintiff against the private defendants, the critical and threshold issue is whether their actions constituted state action as that term has been construed by the courts. A plaintiff must allege and prove state action if he is to recover under the Due Process or Equal Protection Clauses or under 42 U.S.C. § 1983. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Similarly, § 1983 specifically provides remedies for unconstitutional acts performed under color of state law, and therefore § 1983 also requires proof of state action. *United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Since the standards are virtually the same, the state action issues under the Fourteenth Amendment and § 1983 may be considered together. *United States v. Price, supra* at 794, n.7, 86 S.Ct. at 1157, n.7.

The reported cases which have considered whether the operation of race tracks by private parties constitute state action have not reached uniform results. One reason for this lack of uniformity, of course, is that the applicable state law and the facts vary from case to case. The earlier decisions all held that the operation of such courses did not constitute state action. *Martin v. Monmouth Park Jockey Club*, 145 F.Supp. 439 (D.N.J.1956), *aff'd*, 242 F.2d 344 (3d Cir. 1957); *Watkins v. Oaklawn Jockey Club*, 86 F.Supp. 1006 (W.D.Ark.1949), *aff'd*, 183

---

**3.** In this Circuit, a plaintiff may bring an action directly under the Constitution, seeking injunctive and declaratory relief. *See Raffety v. Prince George's County*, 423 F.Supp. 1045, 1054 (D.Md.1976). However, no implied cause of action brought directly under the Constitution for monetary damages is permissible. *Cale v. City of Covington*, 586 F.2d 311, 313 (4th Cir. 1978). Insofar as the first four Counts are concerned, only the § 1983 claim will support a claim for damages.

F.2d 440 (8th Cir. 1950); *Tamelleo v. New Hampshire Jockey Club, Inc.*, 102 N.H. 547, 163 A.2d 10, 12 (1960); *Greenfeld v. Maryland Jockey Club*, 190 Md. 96, 57 A.2d 335 (1948). More recently, the results have varied. In *Fitzgerald v. Mountain Laurel Racing, Inc.*, 464 F.Supp. 263 (W.D.Pa.1979), aff'd, 607 F.2d 589 (3d Cir. 1979); *Catrone v. Massachusetts State Racing Commission*, 404 F.Supp. 765 (D.Mass.1975), *vacated on other grounds*, 535 F.2d 669 (1st Cir. 1976); and *Puntolillo v. New Hampshire Racing Commission*, 390 F.Supp. 231 (D.N.H.1975), federal courts concluded that certain aspects of the operation of race courses did constitute state action. However, in *Middle v. Chicago Downs Racing Assn., Inc.*, No. 77C–3577 (N.D.Ill. August 4, 1978) and *Miller v. Maryland Jockey Club*, M–76–1103 (D.Md. February 18, 1977), the courts found no state action.

There is no simple test readily applicable in each case. "[T]o fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause is an 'impossible task' which 'this Court has never attempted.' *Kotch v. Pilot Comm'rs*, 330 U.S. 552, 556, 67 S.Ct. 910, 912, 91 L.Ed. 1093. Only by sifting facts and weighing circumstances can the non-obvious involvement of the State in private conduct be attributed its true significance." *Burton, supra* at 722, 81 S.Ct. at 860.

In *Burton*, the Supreme Court promulgated a "symbiotic relationship" test. Under this test, state action is present if "[t]he State has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity." *Burton, supra* at 725, 81 S.Ct. at 862. In *Jackson*, the Supreme Court promulgated a second test, the "close nexus" test. Under *Jackson*'s test, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson, supra*, 419 U.S. at 351, 95 S.Ct. at 453; *Moose Lodge, supra*, 407 U.S. at 176, 92 S.Ct. at 1973.

Since the Supreme Court's decision in *Jackson*, different views have been expressed concerning whether the close nexus test completely superseded the symbiotic relationship test. The Supreme Court has not considered this issue. Several Circuits have determined that the symbiotic relationship test does survive *Jackson*.[4] However, the Fourth Circuit has not ruled on the issue. In *Greene v. Johns Hopkins University*, 469 F.Supp. 187, 198 (D.Md.1979), Chief Judge Northrop indicated that the *Burton* symbiotic relationship test did not survive, and suggested that Fourth Circuit case law appears to favor a "close nexus" approach. *See Trageser v. Libbie Rehabilitation Center, Inc.*, 590 F.2d 87, 90 (4th Cir. 1978), *cert. denied*, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). In *Edwards v. Maryland State Fair and Agricultural Society*, 476 F.Supp. 153 (D.Md.1979), Judge Young undertook to balance the interests involved and evaluated the overall relationship between the state and private entities and the relationships between competing liberty interests and constitutional values. In *Edwards*, however, First Amendment rather than Fourteenth Amendment issues were involved.

■ In this particular case, it is immaterial whether the symbiotic relationship test or the close nexus test is applied. Under both tests, this Court finds and concludes on the record here that the actions of the private defendants did not constitute state action.

**4.** *Downs v. Sawtelle*, 574 F.2d 1, 8, 9 (1st Cir.), *cert. denied*, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978); *Graseck v. Mauceri*, 582 F.2d 203, 209, n.22 (2d Cir. 1978), *cert. denied, Graseck v. Middlemiss*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 91 (1979); *Benner v. Oswald*, 592 F.2d 174 (3d Cir. 1979), *cert. denied*, 444 U.S. 832, 100 S.Ct. 62, 62 L.Ed.2d 41 (1979); *Braden v. University of Pittsburgh*, 552 F.2d 948, 957–58 (3d Cir. 1977) (*en banc*); *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589 (3d Cir. 1979); *see Fulton v. Hecht*, 545 F.2d 540 (5th Cir.), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977); *see Greco v. Orange Memorial Hospital Corp.*, 513 F.2d 873 (5th Cir.), *cert. denied*, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975).

**1382**

### (a) The symbiotic relationship test

Burton, Moose Lodge and Jackson must all be considered for an understanding of the requisites of the symbiotic relationship test. In Burton, the plaintiff sued a restaurant which had refused to serve him solely on racial grounds. The restaurant was located in an off-street automobile parking building which was owned and operated by the Wilmington Parking Authority, an agency of the State of Delaware, and which had been leased by the restaurant from the Authority. The Supreme Court found that the exclusion of the plaintiff by the restaurant because of his race constituted state action, and the Court held that plaintiff's rights under the Equal Protection Clause had been violated. In finding state action to be present, the Supreme Court attached significance to the following facts: that the land and the building were publicly owned, that the building itself was dedicated to "public uses" in performance of the Authority's essential government functions, that the costs of the land acquisition and construction of the building were defrayed by public funds, and that the upkeep and maintenance of the building were financed with public funds. The Supreme Court also noted that the peculiar relationship between the two entities conferred on each an incidental variety of material benefits. These benefits included the propinquity of the restaurant and the Agency, the availability of a tax exemption to the restaurant, and the crucial importance of restaurant profits to the financial success of the Agency.

In Moose Lodge, the Supreme Court held that no state action was involved in the refusal of a private club to serve individuals because of their race. The Court rejected the argument that the club's possession of a liquor license and the state's extensive regulation of liquor indicated the existence of state action. In distinguishing Burton, the Court emphasized that the defendant in Moose Lodge was a private club that conducted all of its activities in a building which it owed. The Court also noted that the Club was not publicly funded.

In Jackson, the Court found no state action involved when a utility company terminated service to a customer without affording her a hearing. Plaintiff had contended that state action was present because the defendant utility company was extensively regulated by the state and because the termination of service was permitted by a provision in the company's general tariff filed with the Public Utilities Commission. In analyzing the facts of that case, the Court noted that "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for the purposes of the Fourteenth Amendment * * * Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities." Jackson, supra, 419 U.S. at 350, 95 S.Ct. at 453. In Jackson, the Supreme Court concluded that even though a state may grant a monopoly to a private party, that party's actions do not necessarily constitute state action. The Court specifically found a lack of the symbiotic relationship present in Burton. Noting that the defendant was privately owned, the Court held in Jackson that the defendant's acts in terminating service to its customers did not constitute state action, even though the utility was heavily regulated and enjoyed at least a partial monopoly.

As the facts of this case disclose, the horse racing industry is likewise heavily regulated. The State establishes a limited number of dates on which racing may be conducted in the State for a given year. The State licenses jockeys, trainers, veterinarians and all other racing personnel and delegates broad regulatory powers to the racing stewards, including the power to decide all questions not specifically encompassed in rules of the Commission. Furthermore, the State receives substantial tax revenues from the operation of the race courses, and it receives a portion of the breakage.

After due consideration of the degree of regulation of the horse racing industry by the State of Maryland, this Court concludes that there is no symbiotic relationship between the defendants and the State which would lead to a finding that the acts of the private defendants challenged in this case by the plaintiff constituted state action. In

so holding, this Court concludes that the facts of this case are closer to those of *Moose Lodge* and *Jackson* than to those of *Burton*. The major tracks where horse racing occurs in Maryland are all privately owned by the defendant corporations. The business operations are conducted for the benefit of private stockholders. Private funds have been used for the initial acquisition of and for the maintenance of the properties as well as for current operations. Although the State derives considerable revenue from race track operations, the industry can hardly be viewed as an integral part of a governmental plan. Although there is certainly an interrelationship between the private defendants and the State Racing Commission, it hardly rises to the level which existed between the private and state entities in *Burton*.

In *Miller v. Maryland Jockey Club, Inc.*, Civil No. M–76–1103, Judge Miller of this Court similarly concluded that acts of defendant Maryland Jockey Club, Inc. (likewise a defendant in this case) did not constitute state action under § 1983. In an oral opinion rendered in that case on February 18, 1977, Judge Miller granted the defendant's motion for judgment on the pleadings, concluding that the facts pertaining to the relationship of the Pimlico Race Course with the State of Maryland more closely resembled *Moose Lodge* and *Jackson* than *Burton*.

In the *Miller* case, as here, the plaintiff, in contending that state action was present, relied on the fact that three special funds had been created by the Maryland Legislature to be administered by the State Racing Commission. §§ 12, 17A and 18A, Art. 78B, Md.Ann.Code (1957 Ed.). These special funds required that a percentage of the initial betting pool at State tracks be set aside each year for the improvement of

physical facilities and for various other purposes for the betterment of horse racing in Maryland. In the *Miller* case, the Court concluded that distribution of these funds for the benefit of horse racing in Maryland did not involve the State in the operation of the tracks to such an extent as to convert acts of the private owners into state action within the meaning of § 1983.[5] This Court would agree. The money deposited in the special funds was deducted in the first instance from gross revenue of the tracks and was thereafter returned to the track operators or to the breeders of horses. Even if the sums in question might be deemed to be State funds, the amounts involved are not significant in terms of the overall costs of maintaining and operating the race track properties involved in this case.

In concluding that there is no symbiotic relationship here, this Court finds support in the recent Third Circuit decision in *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589 (3d Cir. 1979). In *Fitzgerald*, a licensed harness racing driver and trainer was expelled from a private track because he had violated a rule of the Pennsylvania State Harness Racing Commission. The District Court granted a preliminary injunction restraining the defendant from denying the plaintiff access to the track and certified the question of the presence of state action to the Third Circuit under 28 U.S.C. § 1292(a)(1). The Third Circuit found an absence of state action under the symbiotic relationship test, noting that while "we agree with the district court in this case that the State's relationship with Mountain Laurel is 'decidedly more symbiotic' than the State's relationship with the public utility in *Jackson*, we do not think the relationship is one which makes the State a joint venturer with Mountain Laurel." *Fitzgerald, supra* at 596;[6] *see also*

---

**5.** In *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589, 592, n.2 (3d Cir. 1979), the Court, although noting that the State of Pennsylvania provided the funds for harness racing, did not find that this financial aid converted acts of the private corporation into state action under the symbiotic relationship test.

**6.** In the *Fitzgerald* case, the Third Circuit applied both the symbiotic relationship test and

the close nexus test. Although finding no state action present under the former test, it did conclude that state action existed under the latter test. For the reasons discussed hereinafter, this Court has concluded that the facts here are sufficiently different from those in *Fitzgerald* that the close nexus test should not be applied in this case.

*Fulton v. Hecht*, 545 F.2d 540 (5th Cir.), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). If anything, the interrelationship between the State and the Maryland horse racing industry is less extensive than the like relationship in *Fitzgerald.*

The cases relied upon by the plaintiff are distinguishable on their facts. In *Louisiana High School Athletic Assn. v. St. Augustine High School*, 396 F.2d 224 (5th Cir. 1968), 85% of the members of the defendant organization were public schools. The public school principals were the nominal members of the Association, and the Association was funded by membership dues which came largely from gate receipts of games held in state-owned and state-supported facilities. Similarly, in *Hennessey v. N.C.A.A.*, 564 F.2d 1136 (5th Cir. 1977), one-half of the defendant's members were public institutions. In *Citizens Council on Human Relations v. Buffalo Yacht Club*, 438 F.Supp. 316 (W.D.N.Y.1977), the defendant private club leased land from the City of Buffalo, and the City had delegated to the Club the governmental function of regulating public access to the public park ground adjacent to the clubhouse. Similarly, in *Ludtke v. Kuhn*, 461 F.Supp. 86 (S.D.N.Y.1978), the New York Yankees had leased Yankee Stadium from the City of New York, and the City paid the cost of maintenance and improvements.

*Puntolillo, supra*, involved an action brought under Title VII of the Civil Rights Act of 1964. In granting a motion to dismiss, the Court permitted the plaintiff to amend his complaint to allege a violation of § 1983, summarily suggesting that the private association named as defendant had acted under color of state law. The facts pertaining to the relationship between the private party and the State in that case had not even been alleged in the pleadings, much less fully developed by affidavits and exhibits as in this case. In *Catrone, supra*, the Court did not discuss the Supreme Court's ruling in *Jackson* and in particular the Supreme Court's admonition that the mere fact that a private business is subject to extensive and detailed state regulation does not convert its action into that of the state for the purposes of the Fourteenth Amendment.

(b) *The close nexus test*

In determining whether or not to apply the close nexus test, the Court must inquire whether there is a sufficiently close nexus between the State and the challenged action of the private entity so that the action of the latter may be fairly treated as that of the State itself. *Jackson, supra*, 419 U.S. at 351, 95 S.Ct. at 453. The test established in *Jackson* requires that the State must be intimately involved in the challenged private conduct before that conduct becomes attributable to the State for purposes of a § 1983 action. *Fitzgerald, supra* at 595. The challenged private conduct in this case is the denial of stall space for plaintiff's horses by the four major race tracks in Maryland.

On the record here, this Court finds and concludes as a matter of law that there was not a sufficiently close nexus between the State of Maryland and the private defendants' denial of stall space to plaintiff so that the challenged private conduct became action of the State itself. Not only was the Commission not intimately involved in the action taken, but it was hardly even involved at all. The affidavits in this case establish that neither applications for stabling nor assignments for stables are submitted, reviewed, approved or in any way acted upon or considered by the Commission, by the Stewards or by any other representative of the State of Maryland. All decisions concerning the allocation of stall space on track property are made solely by the Racing Secretary and General Manager of each track.

Plaintiff claims that race track officials are in frequent contact with the racing stewards and that on at least one occasion, defendant Colwill discussed plaintiff's problems concerning the allocation of stall space with defendant Linton. But mere discussion of the action taken by the private defendants by or among representatives of the Commission hardly amounts to intimate involvement in the challenged private conduct.

Plaintiff also asserts that after he was denied stall space at several of the tracks, he shipped his horses to a temporary receiving barn and attempted to enter several of his horses at Laurel. State stewards ordered him to vacate the temporary receiving barn and refused to permit his horses to be entered into races at Laurel. However, in so acting, the Stewards were doing no more than enforcing Commission Rule 09.-10.01.57(v), which prohibits a trainer from occupying stalls at a race track without the written permission of the management of the track. Under this Rule, the decision is left to the discretion of each track, and it is the action of the private track which is decisive. By enforcing the Rule, the Commission was not intimately involved in making the initial decision itself.

Other arguments advanced by the plaintiff are equally unavailing in establishing the existence of the requisite nexus between the State and the challenged activity. Although the Commission formerly established a stabling schedule which required that a track not conducting a meet provide stall space for horses participating in meets at other tracks, this formal stabling schedule has now been discontinued. It is true, as plaintiff points out, that Maryland law grants a preference to Maryland residents seeking stall spaces. *See* § 26B, Art. 78B, Md.Ann.Code (1975 Ed.). But plaintiff is a State resident, and this statute played no part in the denial of stall space to him.

In *Fitzgerald, supra,* the Third Circuit held that the expulsion of the plaintiff from defendant's track did constitute a sufficiently close nexus under the facts of that case to amount to state action. However, in that case there was a far greater degree of state participation than here. The defendant in *Fitzgerald* had entered into a contract with all state licensed trainers which granted trainers free stall space so long as their horses were raced and managed in accordance with the terms of the contract, the form of which was subject to the approval of the State Harness Racing Commission. Pursuant to certain provisions therein, the defendant revoked the contract and ejected the plaintiff for his violation of a Commission Rule which pro-

hibited "inconsistent driving." However, it was the racing stewards who had made the determination that the plaintiff was guilty of inconsistent driving. On the basis of that determination, stall space was denied by the track. Thus, in the *Fitzgerald* case, the challenged conduct was the result of the plaintiff's violation of the Commission's Rule.

Here the facts are quite different. The critical determination that plaintiff should not be granted stall space was made solely by the private defendants and was not based on any action taken by the Commission. In 1978, plaintiff had been assigned one stall at Timonium for use at the Bowie fall meet. However, he occupied more than one stall at the time, and when he refused to vacate, court action was brought against him by the operators of the Timonium track. When this situation was brought to the attention of the other owners of tracks in Maryland, they decided that they did not want to assign stalls to the plaintiff.

On the record here, this Court finds and concludes that representatives of the State of Maryland did not participate in the challenged activity to such an extent that the private action became state action. Accordingly, there is no close nexus here which would support a finding that state action was involved.

#### (c) *Concerted action*

Plaintiff also argues that action taken by the racing stewards in ordering plaintiff to vacate the receiving barn and in denying plaintiff's entries constituted state action under the "concerted action" theory. In support of this argument, plaintiff relies on *United States v. Price, supra,* and *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, these cases do not support plaintiff's claim.

In *Adickes* and *Price,* the Court recognized that "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for the purposes of the statute." *Adickes, supra,* 398 U.S. at 152, 90 S.Ct. at 1605; *Price, supra,* 383 U.S. at 794, 86 S.Ct. at 1157. However, in *Adickes,* the Supreme Court

recognized that not all joint activity of state officials and private individuals would amount to state action. The test which must be applied is whether the action of the private defendant was compelled by a statutory provision or a custom having the force of law. *Adickes, supra,* 398 U.S. at 171, 90 S.Ct. at 1598. In this case, it is clear that when the private defendants denied plaintiff stall space, they were not compelled to do so by any statutory provision or custom having the force of law. Accordingly, the "concerted action" theory is inapplicable in this case.

For the reasons stated, this Court concludes that the actions taken by the private defendants in refusing stall space to the plaintiff did not constitute state action. Accordingly, the private defendants' motions for summary judgment will be granted as to the first four Counts of the complaint.[7]

### (2) Counts V and VI

In the fifth Count, plaintiff has alleged that portions of Commission Rule 09.10.01.-45 are unconstitutionally vague and violate the Fourteenth Amendment and the Maryland Declaration of Rights because the Rule amounts to an unlawful delegation of legislative power. This Count neither alleges a cause of action against the private defendants nor seeks relief from them. Accordingly, the Court will grant the private defendants' motion for summary judgment as to Count V.

In Count VI, plaintiff has alleged that the defendants knew or should have known that he had entered into contracts with the owners of race horses and that these contracts required that plaintiff procure stall space, and train and enter the horses in races. Accordingly, he asserts that the defendants' denial of stall space constituted tortious interference with his contracts.

■ The claim asserted by plaintiff under Count VI of his complaint is based on state rather than federal law. Since plaintiff's claims under the Federal Constitution

and under § 1983 are without merit, there is no basis for this Court to undertake to decide plaintiff's state claim under a theory of pendent jurisdiction. *Sigmon v. Poe,* 564 F.2d 1093 (4th Cir. 1977); *Abernathy v. Schenley Industries, Inc.,* 556 F.2d 242 (4th Cir. 1977), *cert. denied,* 436 U.S. 927, 98 S.Ct. 2822, 56 L.Ed.2d 770 (1978). Accordingly, this Court will dismiss Count VI of the complaint for lack of subject matter jurisdiction, without prejudice to the right of the plaintiff to assert this claim in an appropriate state forum. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### II

### The motions of the state defendants

■ This Court will now consider the claims asserted by the plaintiff against the Commission and the four racing stewards, the so-called "state defendants" herein. At the outset, this Court would note that, since the Commission is an agency of the State of Maryland, plaintiff is not entitled to recover damages from the Commission. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Similarly, as state officials, the four racing stewards cannot be sued in their official capacities in an action seeking money damages. *Edelman v. Jordan, supra; Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). However, the complaint indicates that the plaintiff is also suing the racing stewards in their individual capacities. Under such circumstances, plaintiff's action for damages against the racing stewards may be maintained. *Scheuer v. Rhodes,* 416 U.S. 232, 237–238, 94 S.Ct. 1683, 1686–1687, 40 L.Ed.2d 90 (1974).

### (1) Counts I to IV

■ Plaintiff has alleged that the state defendants have denied him the opportuni-

---

**7.** In view of the Court's decision concerning the "state action" issue, it is not necessary to decide whether, as required by *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), plaintiff was denied a liberty or property interest when he was refused stall space by the private defendants.

ty to earn a livelihood a claim which goes beyond the alleged denial of stall space. The action of the stewards challenged here is their ordering the plaintiff to vacate the Laurel receiving barns and denying entry of his horses in races until he had complied. The questions presented are whether the plaintiff has a liberty or a property interest in racing his horses and whether plaintiff has been deprived of such an interest by acts of the state defendants. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Although liberty and property are broad terms, 408 U.S. at 571, the range of interests protected by the Fourteenth Amendment is not infinite. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. * * * Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709; *see Fenner v. Bruce Manor, Inc.*, 409 F.Supp. 1332, 1343 (D.Md.1976).

After reviewing the record here, this Court concludes that the stewards' action in denying entry to plaintiff's horses may be similar to the suspending of his license. That question cannot be conclusively determined by way of a motion for summary judgment. Conflicting inferences arise from the affidavits and other matters of record here.

In *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), the Supreme Court held that, under New York law, a licensed horse trainer has a property inter-

est in his license sufficient to invoke the protection of the Due Process Clause. The Court found that New York statutory law prevented suspension or revocation of a license at the discretion of the racing authority. A license could be suspended or revoked only upon proof of certain contingencies, which were specified in the statute. Therefore, the Court held that "state law has engendered a clear expectation of continued enjoyment of a license absent proof of culpable conduct by the trainer. Barchi, therefore, has asserted a legitimate 'claim of entitlement * * * that he may invoke at a hearing.'" *Barry v. Barchi, supra*, at 64, n.11, 99 S.Ct. at n.11 2649.

Similarly, under Maryland law, licenses may be revoked only for cause. *Jacobson v. Maryland Racing Commission*, 261 Md. 180, 183, 274 A.2d 102 (1971); *Mahoney v. Byers*, 187 Md. 81, 84, 48 A.2d 600 (1946). Consequently, this Court concludes that the plaintiff would have a legitimate claim of entitlement sufficient to invoke constitutional protections if he can prove at the trial that actions of the stewards amounted in effect to the suspension of his license.[8] As noted hereinabove, however, plaintiff would not be entitled to recover damages from the stewards under Counts I and II, since these Counts have been brought directly under provisions of the Fourteenth Amendment. Declaratory and injunctive relief would be available as to these state defendants under those two Counts if plaintiff is able to prove the essential elements of his claims.

If plaintiff can prove at trial that he has a property interest in racing his horses, a hearing should have been held either before or after he was denied the right to enter his horses in races. *Barry v. Barchi, supra*. Although defendants' affidavits refute many of the essential elements of the claims asserted by plaintiff against the racing stewards, these claims cannot be finally

---

8. *Lewitus v. Colwill*, 479 F.Supp. 439 (D.Md. 1979), does not require a contrary conclusion. There, a race horse owner's application for an owner's license was denied. In holding that the plaintiff did not have a property interest in obtaining the license, the Court stressed that Mr. Lewitus had not already acquired a license

and therefore had only an abstract desire for or a unilateral expectation of receiving it. *Lewitus v. Colwill, supra* at 446–47. Here, plaintiff has already received his license and, under *Barry v. Barchi*, he would have a legitimate claim of entitlement to it.

decided by way of a motion for summary judgment. Consequently, this Court will deny the state defendants' motion for summary judgment with respect to the Due Process claim asserted in Count I, insofar as plaintiff's claim for declaratory and injunctive relief is concerned.

Similarly, there are disputed inferences of fact pertaining to plaintiff's Equal Protection claims. The test is whether there is a rational basis for the actions of the state defendants. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). The affidavits in the record here present issues of fact which can be determined only at the trial. Accordingly, the motion for summary judgment of the state defendants will likewise be denied as to Count II, insofar as plaintiff's claim for declaratory and injunctive relief is concerned.

The above discussion concerning Counts I and II is likewise applicable to Counts III and IV. In Count III, plaintiff asserts claims under § 1983 which are identical to those brought under Counts I and II. In Count IV, plaintiff alleges that COMAR 09.10.01.57(v) amounts in effect to the suspension of his racing license and is therefore unconstitutional. For the reasons previously stated, the questions presented cannot be determined by way of summary judgment.

### (2) *Count V*

Plaintiff's fifth Count charges that those Commission rules [9] which delegate broad powers to the stewards are both unconstitutionally vague in contravention of the Fourteenth Amendment and constitute an unlawful delegation of legislative functions in violation of Article 8 of the Maryland Declaration of Rights. The plaintiff asserts that the rules are unconstitutionally vague because they fail to prove adequate notice of those acts which may be punishable by the stewards and because they confer unrestrained power on the stewards.

A statute is unconstitutionally vague if it either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application. *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). These principles even apply to a regulation which governs economic or commercial activities if its violation can engender penalties. *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 48–50, 86 S.Ct. 1254, 1262–1263, 16 L.Ed.2d 336 (1966); *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952); *Diebold, Inc. v. Marshall*, 585 F.2d 1327, 1335–36 (6th Cir. 1978). However, "the fairness of a regulatory warning is governed by a less stringent standard in the absence of criminal penalties or First Amendment implications. *Smith v. Goguen*, 415 U.S. 566, 573 n.10, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Papachristou v. City of Jacksonville*, 405 U.S.

---

**9.** The rules which the plaintiff challenges are found in COMAR 09.10.01.45. In particular, plaintiff challenges the following rules:

"H. The stewards have the power to interpret these rules and to decide all questions not specifically covered by them.

\* \* \* \* \* \*

"J. The stewards have the power and the duty to regulate and govern the conduct of all racing officials and of all owners, trainers, jockeys, grooms, and other persons attendant on horses during, before, and after races.

\* \* \* \* \* \*

"M. The stewards have the power to determine all questions arising with reference to entries and racing.

\* \* \* \* \* \*

"O. The stewards have the power to punish for violation of these rules any person subject to their control and, in their discretion, to impose fines or suspensions or both for infractions.

\* \* \* \* \* \*

"V(1). If the stewards find that any person licensed by the Commission has violated any of the rules of the Commission or has been involved in any improper turf practice, [they may impose various penalties]

\* \* \* \* \* \*

"W. If any case occurs which is not, or which is alleged not to be, provided for by these rules, it shall be determined by the stewards in such manner as they think just and conformable to the usages of the turf."

156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972)"; *Diebold, Inc. v. Marshall, supra* at 1337.

 The issue before the Court is solely a question of law. After a review of the record here in the light of these principles, this Court concludes that the grant of power to the racing stewards contained in COMAR 09.10.01.45 is not unconstitutionally vague. These regulations should be upheld because they are reasonable and consistent with the purposes of the Maryland statutes regulating horse racing. *See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). To require great specificity in rules governing commercial activities would restrict the ability of an administrative agency to promulgate appropriate regulations to meet the varied situations with which they must deal. *Brenner v. Occupational Safety and Health Review Commission*, 505 F.2d 869, 872 (10th Cir. 1974). As the Tenth Circuit noted in that case, citing *Papachristou, supra*, regulations governing commercial activities are to be construed with "leeway". *Id.* at 872. In rejecting a challenge to a similar rule based on grounds of vagueness, a Pennsylvania appellate court, in *Pennsylvania State Horse Racing Commission v. DiSanto*, 29 Pa.Cmwlth. 574, 372 A.2d 487 (Pa.Cmwlth. 1977), considered the rule in the overall context of the racing industry and its relationship to other rules promulgated by a state racing commission.

In this case, the action taken by stewards was the result of the willful refusal of the plaintiff to remove his horses from a receiving barn. The discretion granted the stewards is tempered by the right of an aggrieved party to further administrative and judicial review of the stewards' action. COMAR 09.10.01.45(v)(2) provides that a licensed trainer like plaintiff may appeal to the Commission from a ruling of the racing stewards. The Commission is required to hold a hearing on the appeal and the aggrieved party may be represented by counsel and is afforded other procedural rights. Judicial review of the Commission's ruling on such an appeal is likewise afforded by state law. Art. 41, § 255, Md.Ann.Code. Since plaintiff did not avail himself of these rights afforded him by the regulations in question, he can hardly complain that the rules are vague and overly broad as a matter of law.

There is likewise no merit to plaintiff's contention that these regulations constitute an unlawful delegation of power to the stewards under federal standards. A review of the rules indicates that they delegate only judicial and administrative, rather than legislative, power. "There is no provision in the Federal Constitution which directly or impliedly prohibits a state, under its own laws, from conferring upon nonjudicial bodies certain functions that may be called judicial." *Consolidated Rendering Co. v. Vermont*, 207 U.S. 541, 552, 28 S.Ct. 178, 181, 52 L.Ed. 327 (1908). Consequently, this Court concludes that the discretion granted to the stewards by COMAR 09.10.-01.45 does not amount to an unconstitutional delegation of power.

Finally, plaintiff argues that the rules in question amount to an invalid delegation of legislative powers in violation of the Maryland Delegation of Rights. Plaintiff relies on the following quotation from *Pressman v. Barnes*, 209 Md. 544, 121 A.2d 816 (1956):

[g]enerally, a statute or ordinance vesting discretion in administrative officials without fixing any standards for their guidance is an unconstitutional delegation of legislative power. *Pressman, supra* at 555, 121 A.2d at 822.

Even if there is a difference in the standard to be applied under state constitutional law as opposed to that under federal constitutional law, this Court is satisfied that there is no unconstitutional delegation here. Under *Pressman* itself, there has been no invalid delegation of legislative powers insofar as these rules are concerned. In the same paragraph relied upon by plaintiff, the Court of Appeals said the following:

But we also hold, as a qualification of the general rule, that where the discretion to be exercised relates to police regulations for the protection of public morals, health, safety, or general welfare, and it is impracticable to fix standards without destroying the flexibility necessary to enable the administrative officials to carry

out the legislative will, legislation delegating such discretion without such restrictions may be valid * * * The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases. *Pressman, supra* at 555, 121 A.2d at 822.

Clearly, the regulation of horse racing in Maryland is an exercise of the state's police power that relates both to public morals and to the general welfare. *See Jacobson, supra; Mules v. Maryland Racing Commission*, 30 Md.App. 533, 353 A.2d 664 (1976). This Court concludes that it would be impracticable to restrict the stewards' functions without destroying the necessary flexibility required by them to carry out their tasks. Consequently, this Court concludes that the grant of power to the stewards does not constitute an unlawful delegation of legislative power under Maryland constitutional law. For the reasons stated, the state defendants' motion for summary judgment with respect to the fifth Count will be granted.

### (3) *Count VI*

█ In Count VI, plaintiff asserts that the state defendants have tortiously interfered with his contracts. A determination of this claim requires the presentation of evidence concerning whether the defendants knowingly or intentionally interfered with the contracts. Since the affidavits filed present a factual dispute as to these issues, the claim presented in Count VI is not appropriate for summary judgment. This Court has subject matter jurisdiction of this claim asserted under state law since it has jurisdiction to consider the federal claims contained in Counts I to IV.

For the reasons stated, it is this 22nd day of May, 1980, by the United States District Court for the District of Maryland,

ORDERED:

1. That the motions for summary judgment of the private defendants be and the same are hereby granted as to all Counts;

2. That judgment be and hereby is entered in favor of the defendants Laurel Racecourse, Inc., Frank J. Brady, Louis Raffetto, Maryland State Fair and Agricultural Society, Inc., William Linton, Howard M. Mosner, Jr., Southern Maryland Agricultural Association of Prince George's County, Maryland, Inc., Alvin A. Karwacki, Lawrence J. Abbundi, Maryland Jockey Club and Charles J. Lang, with costs;

3. That the motion for summary judgment of the state defendants be and the same is hereby granted as to Count V; and

4. That the motion for summary judgment of the state defendants be and the same is hereby denied as to Counts I, II, III, IV and VI.